**WARNER CONSTRUCTION COMPANY,**
Appellant,

v.

**BLUE DIAMOND COMPANY, Appellee.**

No. 17073.

Court of Civil Appeals of Texas.

Dallas.

April 19, 1968.

Rehearing Denied May 31, 1968.

Second Rehearing Denied June 28, 1968.

G. David Westfall, of Bailey, Williams, Weber & Allums, Dallas, for appellant.

Spencer Carver, of Biggers, Baker, Lloyd & Carver, Dallas, for appellee.

DIXON, Chief Justice.

Appellant Warner Construction Company was the general contractor to make certain additions to Lake Highlands Elementary School and Lake Highlands Junior High School of the Richardson Independent School District. On January 18, 1963 appellant contracted with appellee Blue Diamond Company as a subcontractor to furnish and install in both schools certain vinyl asbestos tile for a consideration of $5,724.

Under the terms of the written contract the material to be furnished by Blue Diamond did not include the undercoating, that is, the floor surfaces on which the tile was to be laid. However, the contract did provide that if the said surfaces or work to which the tile was to be affixed were found

to be unsatisfactory or unsuitable written notice should be given to appellant of such condition; otherwise no consideration would be given to claims for extra compensation or non-responsibility in connection therewith.

The contract also contained a provision that upon refusal of the subcontractor to make good defects in materials and workmanship, Warner should have the right to have such defects corrected at the expense of the subcontractor.

In connection with the contract appellee executed a written warranty for a period of one year from October 23, 1963 against defective materials or workmanship.

Within the period of the warranty humps or bubbles appeared under 20 or 30 tiles in the elementary school due to the presence under the tiles of a foreign substance which, according to some of the testimony, was probably a mixture of sand and cement. Anyway, the testimony is undisputed that the substance, whatever it was, should not have been there and was the cause of the humps.

Warner called on Blue Diamond to remedy the defect. Blue Diamond made a bid to do so for the sum of $2,090 but expressly excluded any warranties in respect to the repair job. Because of this exclusion as to warranties Warner would not let the repair contract to Blue Diamond. Instead it let the contract to Jeter-Millar Company, Inc. for a consideration of $2,411.90. The latter company did the repair job.

On August 20, 1965 appellant Warner filed this suit against Blue Diamond.* In an amended petition Warner sought judgment for $2,411.90, basing its claim on the one-year warranty for which Blue Diamond had contracted, and on the provision of the

contract to the effect that if Blue Diamond refused to make good any defective workmanship, Warner would have the right to have the defects remedied at the expense of the subcontractor.

By way of answer Blue Diamond filed a general denial, and specially pleaded that all of its labor and materials were furnished and performed in a good and workmanlike manner and, further, that defective materials and structure used and erected by Warner constituted the sole cause of Warner's loss.

A jury returned a verdict to the effect that (1) Blue Diamond failed to perform its work in a good and workmanlike manner; (2) the reasonable cost of the repairs was $2,411.90; (3) the bubbles or humps in the floor of the elementary school were present at the time Blue Diamond installed the tile; (4) the jury answered "No" as to whether it found from a preponderance of the evidence that the bubbles or humps were the result of the failure of Warner to comply with specifications for installation of underlayment; (5) the jury answered "No" as to whether it found from a preponderance of the evidence that the tile floor was capable of repair without damaging the remainder of the floor without humps; and (6) the reasonable and necessary cost to repair the tile floor which was defective was $2,411.90.

Both parties filed motions for judgment on the verdict. Both motions were overruled. Appellee also filed motions to disregard certain findings (as to each of the six special issues) and for judgment *non obstante veredicto*. The motions of appellee to disregard certain issues and for judgment *non obstante veredicto* were sustained. Judgment was accordingly rendered in favor of appellee.

---

* Warner Construction Company became involved in financial difficulties and Aetna Casualty & Surety Company, surety on a payment and performance bond, took over responsibility for completion of the project and was an assignee of Warner's rights under the contract. However, Warner continued to supervise the work for Aetna.

Appellant rests its appeal on nine points of error charging that the court erred in (1) overruling appellant's motion for judgment on the verdict; (2) in granting appellee's motions to disregard certain findings and (3) for judgment *non obstante veredicto*; (4) in holding that there was no issue presented that appellee failed to perform its work in good and workmanlike manner; (5) in holding there was no issue presented as to the reasonable cost for repairs of the tile in question; (6) in holding there was no evidence to raise a jury issue that appellee failed to perform its work in a good and workmanlike manner; (7) in holding that there was no evidence to raise a jury issue as to reasonable costs for the repairs of the tile floor in question; (8) in holding that there was insufficient evidence to raise a jury issue that appellee failed to perform its work in a good and workmanlike manner; and (9) in holding that there was insufficient evidence to raise a jury issue of the reasonable costs for the repairs to the tile floor in question.

We are of the opinion that appellant's points are well taken.

■ The evidence is undisputed that the humps or bubbles were caused by foreign substances underneath the tiles on top of the surfaces to which the tiles were applied or affixed.

The evidence is also undisputed that appellee did not give appellant any written notification, as provided in its contract, that it deemed the surfaces or work to which the tiles were to be applied or affixed were unsatisfactory or unsuitable.

There was sufficient evidence to support the jury's finding that Blue Diamond failed to perform work which it had contracted to do in a good and workmanlike manner. Mr. Millar of the Jeter-Millar Company testified that when his company took up the bulging tiles a white substance was found underneath which someone had used to prepare the floor; it was something added to the concrete floor after it was finished; it was fill material—whoever installed it.

John Dorsey, a consulting engineer, testified to finding a substance underneath the tile and on top of the cement floor surface which was relatively soft and which upon chemical analysis was found to be mostly cement and sand. It was his opinion that the substance which caused the humps had got there prior to the laying of the tile and that the humps in the under surface on which the tile was laid were there from the beginning. This fill had not been put in in a workmanlike manner; this defect in fill material was on the floor surface below the tile and mastic with which the tile was glued to the floor surface.

Clyde Caddell, Blue Diamond's manager of its floor department, went to the elementary school after complaint was made of the humps. He took up several tiles and found the foreign substance underneath. It was his opinion that the substance was not there when the tile was laid. However, the only basis for his opinion was his confidence in his workmen—if the substance had been there they would have seen it and they would not have done such a thing as lay tile over the substance he found underneath the tiles.

*Caddell admitted that if the tile was laid over the foreign substance it was not the usual and customary manner in laying tile and that if his men did it, the job of laying the tile was not done in a good and workmanlike manner.*

We think there was ample evidence reasonably to infer that the foreign substance was there when the tile was laid by Blue Diamond. That being so Blue Diamond in laying the tile over the substance admittedly failed to do its work in a good and workmanlike manner, as the jury found. It is undisputed that Blue Diamond did not give Warner written notification that the surface to which the tile was to be affixed was unsatisfactory or unsuitable.

We sustain appellant's fourth, sixth and eighth points.

■ We are of the opinion that there was sufficient evidence to support the jury's answer to the second and sixth special issues: that the reasonable and necessary cost of the repairs to the tile floor was $2,411.90.

Robert E. Millar of the Jeter-Millar Company, who did the repair work, testified that there was no way of taking up an individual vinyl asbestos tile without damage to the tiles on all four sides of the tile taken up. In this case he was asked to bid on replacing all the tiles in the corridor and in the classrooms where the humps had appeared. He had not been called on to exercise his judgment whether all the tiles had to be replaced.

Clyde Caddell, for Blue Diamond, testified that the repair job could have been accomplished by taking up and replacing only the individual tiles where the humps occurred, and that these tiles, some 20 or 30 in number, could have been replaced at a cost of $2.50 per tile. However, Caddell conceded that the replacement tiles would be different in color than the other tiles, and that such patchwork would be unsightly in appearance until, perhaps, the colors eventually became indistinct due to the constant walking on them by the school children.

However, when Blue Diamond itself bid on the repair job it bid on the replacement of all the tiles in the areas in question; Caddell stated that this was done upon the architect's instructions. Its bid was $2,090 plus $333 if installation of the new tile was to be done at overtime rates. Also its bid did not include sales or use tax, which would be added unless tax exempt certificates were furnished. Blue Diamond's offer expressly excluded any warranty.

Caddell testified that the above figures were fair and reasonable and that the labor and materials were necessary to restore the flooring to its proper condition.

The bid of Jeter-Millar Company broke the costs down as follows:

"Remove and install vinyl asbestos tile in 6 class rooms and
corridor * * *                                            $2,231.00
Fill & level floor where required * * *                      180.90
Total—                                                    $2,411.90"

Robert Millar testified that the above costs were reasonable and necessary to perform the requested repairs.

We sustain appellant's fifth, seventh and ninth points of error.

Appellee in a counterpoint says that appellant only pleaded that the tile floor "became unfit for the purpose it was intended" and did not plead that appellee's work would be done in "a good and workmanlike manner," therefore there was a variance in appellant's pleadings and proof.

■ There is no merit in the above contention. Attached to appellant's petition was a copy of the written contract which in paragraph No. 20 obligates appellee to make good any defects in workmanship. Moreover, testimony in regard to the quality of the workmanship was received without objection. In fact, Caddell, Blue Diamond's witness, conceded that if the tile was laid by Blue Diamond over the foreign substance it was not work done in a good and workmanlike manner. Further, in the record we find no objections to the submission of the first special issue on the above grounds, therefore the matter is not before us for review. Minugh v. Royal Crown Bottling Co., 267 S.W.2d 861 (Tex. Civ.App., San Antonio 1954, writ ref'd); Rules 272 and 274, Vernon's Texas Rules of Civil Procedure.

Appellee also says that the court submitted the wrong measure of damages. According to appellee the proper measure of damages in this case is the difference between the value of the building as contracted and its value had it been constructed in accordance with the contract.

We shall not pass on the question whether the court submitted the correct measure of damages. The record before us contains no objections to the submission of the second and sixth special issues on the ground that such issues submitted the wrong measure of damages. In the absence of such objections we must again hold the question is not presented for review. Employment Advisors, Inc. v. Sparks, 368 S.W.2d 199 (Tex.Sup.1963); Whitson Company v. Bluff Creek Oil Co., 156 Tex. 139, 293 S.W.2d 488 (1956).

We are of the opinion that the answers of the jury to the six special issues find support in the evidence in this case. Therefore, it was error for the court to overrule appellant's motion for judgment on the verdict and error to sustain appellee's motions to disregard the answer to the issues and for judgment *non obstante veredicto.* Appellant's first, second and third points of error are sustained.

The judgment of the trial court will be reversed and judgment here rendered that appellant Warner Construction Company have judgment against Blue Diamond Company for the sum of $2,411.90 principal plus interest and costs of suit as prayed.

Reversed and rendered.

### ON REHEARING

In our main opinion delivered April 19, 1968 we pointed out that we found no objections in the record to the submission of the first, second and sixth special issues.

Subsequently on May 3, 1968 the trial judge directed that a supplemental transcript be prepared and filed pursuant to Rule 428, Vernon's Texas Rules of Civil Procedure. On the same date the supplemental transcript containing copies of appellees objections to the court's charge was filed in this court in connection with appellee's motion for rehearing.

Appellant has filed a motion to strike the supplemental transcript on the ground that the instrument was filed too late. Appellant cites Cannon v. Canida, 321 S.W.2d 631 (Tex.Civ.App., Texarkana 1959, writ ref'd n. r. e.). We have also considered the holdings in Grabes v. Reinhard Bohle Machine Tools, Inc., 381 S.W.2d 395 (Tex. Civ.App., Corpus Christi 1964, writ ref'd n. r. e.) and Gale v. Spriggs, 346 S.W.2d 620 (Tex.Civ.App., Waco 1961, writ ref'd n. r. e.).

The holdings in the above cases are not applicable here. In none of the above cases did the appellant comply with the requirements of Rule 272, T.R.C.P. by having the dictated objections to the charge transcribed and signed by the judge and *"filed with the clerk in time to be included in the transcript."* (Emphasis ours.)

In the case now before us appellee did comply with Rule 272, T.R.C.P. Appellee's objections were dictated before the reading of the charge to the jury. The dictated objections to the charge were transcribed, signed by the judge and filed with the clerk on July 27, 1967. The judgment was signed September 6, 1967. The transcribed objections were certainly filed and signed in time to have been included in the original transcript. Appellant's motion to strike is overruled.

It now appears from the record that appellee objected to the submission of the first issue on the grounds that there were no pleadings and no evidence and that there was insufficient evidence to raise the fact issue. Appellee objected to the second issue on the grounds that said issue was a comment on the weight of the evidence, presumes an affirmative answer to the first issue, and that the issue submits the wrong measure of damages. We see no reversible error on the part of the court in overruling

the above objections. Appellee's counterpoints are overruled.

The supplemented record fails to show that any objections were made to the submission of the sixth special issue.

The motion for rehearing is overruled.