Andy LOWE, Petitioner,

v.

TEXAS TECH UNIVERSITY, Respondent.

No. B–5756.

Supreme Court of Texas.

July 14, 1976.

Rehearing Denied Sept. 29, 1976.

298

Garner, Vickers, Purdom & Nelson, Robert E. Garner, Lubbock, and Paul Spillman, Wellington, for petitioner.

John Hill, Atty. Gen., Jack Sparks, Asst. Atty. Gen., Austin, for respondent.

STEAKLEY, Justice.

We are required to determine if the allegations of Andy Lowe in his suit against Texas Tech University for personal injuries invoked the waiver of governmental immunity provisions of the Texas Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19 (1970), and entitle him to a trial. The trial court held that they do not, sustaining pleas to the jurisdiction and in abatement filed by Texas Tech; this action was affirmed by the Court of Civil Appeals, 530 S.W.2d 337. Our view is otherwise and we accordingly reverse the judgments below and remand the cause to the trial court.

Lowe alleged that he sustained an injury to his left knee while playing varsity football for Texas Tech; and that on a later occasion the knee was reinjured, the result of which was total and permanent disablement. He further alleged, as pertinent here, that "the coaching staff, manage-

ment, and trainers" of Texas Tech were negligent in these respects:

In failing to furnish proper equipment, braces, and/or supporting devices to Plaintiff;

In failing to permit Plaintiff to wear proper equipment, braces and supporting devices available;

In furnishing equipment, uniforms and pads which were defective;

In refusing to permit Plaintiff to wear proper and correctly prescribed equipment, braces and supporting devices.

■ Texas Tech correctly states that the State is not liable for torts of its officers or agents in the absence of a constitutional or statutory provision therefor. *Texas Highway Department v. Weber,* 147 Tex. 628, 219 S.W.2d 70 (1949); and that a State agency such as Texas Tech shares this governmental immunity. *Walsh v. University of Texas,* 169 S.W.2d 993 (Tex.Civ.App.—El Paso 1942, writ ref'd); *Texas Technological College v. Fry,* 278 S.W.2d 480 (Tex.Civ. App.—Amarillo 1954, no writ). See also Greenhill & Murto, *Governmental Immunity,* 49 Tex.L.Rev. 462 (1971). We adhere to our decisions in the past that the waiver of governmental immunity is a matter addressed to the Legislature.

■ The Texas Tort Claims Act was enacted by the Legislature in 1970. The statute provided for waiver of governmental immunity in three general areas: use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property. The statute calls for liberal construction to effectuate its purposes (Section 13). The problem before us for determination at this stage of the proceeding is whether Lowe's allegations of negligence state a case within the waiver of immunity provided in the following provision of the statute:

Sec. 3. Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the

scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, other than motor-driven equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state, under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state, or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state. Such liability is subject to the exceptions contained herein, and it shall not extend to punitive or exemplary damages. Liability hereunder shall be limited to $100,000 per person and $300,000 for any single occurrence for bodily injury or death and to $10,000 for any single occurrence for injury to or destruction of property.

We paraphrase that portion of Section 3 pertinent here as follows:

Each unit of government in the state shall be liable for money damages for death or personal injuries *so caused* (i. e., when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office) from some condition or some use of tangible property under circumstances where there would be private liability.

If the above quoted allegations of Lowe state a case for recovery within these waiver of immunity provisions, the abatement and dismissal of Lowe's suit was in error, and he is entitled to a trial.

We have heretofore considered this legislative language in *Texas Dept. of Corrections v. Herring,* 513 S.W.2d 6 (Tex.1974); *McGuire v. Overton Memorial Hospital,* 514 S.W.2d 79 (Tex.Civ.App.—Tyler), *writ ref'd n. r. e. by per curiam,* 518 S.W.2d 528 (Tex. 1975); *Mokry v. University of Texas Health Science Center at Dallas,* 529 S.W.2d 802 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.); and *Beggs v. Texas Dept. of Mental Health and Mental Retardation,* 496 S.W.2d 252 (Tex.Civ.App.—San Antonio 1973, writ ref'd).

*Herring* ruled that an allegation that the state agency failed "to provide adequate medical care and treatment" does not allege a "use of tangible property" within the ambit of the Texas Tort Claims Act. We approved the holding in *Beggs* to the same effect, i. e., that an alleged negligent act in transferring a patient from a state hospital to a private nursing home did not involve the use of tangible property.

In *McGuire,* we let stand a judgment of reversal of a summary judgment in favor of a municipally operated hospital, and a remand for trial, of a suit for personal injuries caused when a patient fell while attempting to get out of bed. The allegations of negligence were the failure to provide a bed with side boards or guard rails, the failure to take proper cognizance of the condition of the patient and to anticipate and guard against the accident, the failure to exercise the care and proper attention toward the patient, and the failure to provide adequate nurses and attendants. We said:

". . . We believe that injuries proximately caused by negligently providing a bed without bed rails are proximately caused from some condition or some use of tangible property under circumstances where a private person would be liable. Therefore, if the Hospital is found negligent in providing a bed without guard rails, it may not assert governmental immunity . . . ." (518 S.W.2d 528)

Also to the point in the light of the writing by the Court of Civil Appeals was our action of approval in *Mokry.* Mokry brought suit under the Tort Claims Act for personal injuries resulting from the negligent loss of his left eyeball after it had been surgically removed and while it was being prepared for laboratory examination at the University of Texas Health Science Center. The negligence alleged against the State agency was the failure to provide for

use certain items of laboratory equipment, together with the failure to properly use the facilities that were employed. It was specifically held by the Court of Civil Appeals that the allegations to such effect stated a cause of action arising from some condition or use of tangible property within the purview of the Texas Tort Claims Act:

> . . . We hold that these pleadings adequately allege a cause of action for damages from negligent acts or omissions of an employee of the state, acting within the scope of his employment, arising from some condition or use of tangible property under circumstances which the state, if it were a private person, would be liable to the plaintiff.

*Gonzales v. Lubbock State School,* 487 S.W.2d 815 (Tex.Civ.App.—Amarillo 1972, no writ), prominently cited by Texas Tech in support of its position, did not reach this Court for review; even so, the specific holding is not in point here, i. e., that allegations of negligence against the State agency in hiring incapable employees, in failing to maintain adequate supervision, and in failing to have a sufficient number of qualified employees, do not constitute allegations of negligence arising from some condition or use of tangible property.

The allegations in the case at bar require a construction of the statutory language of the Tort Claims Act in two respects: whether the waiver of immunity is invoked by allegations that Texas Tech through its authorized personnel was negligent in affirmatively furnishing "equipment, uniforms and pads which were defective"; and, whether the waiver is also invoked by the allegations of negligent acts of failure to furnish proper equipment and failure or refusal to permit the wearing of proper equipment. Neither the brief of Texas Tech nor the opinion of the Court of Civil Appeals speaks to the former; as to the latter, Texas Tech argues in its brief, and the Court of Civil Appeals has held, that Lowe's allegations of negligent failure to furnish the proper equipment, or to permit his wearing of proper equipment, do not state a cause of action under the waiver of

immunity provisions of the statute. The rationale is that allegations to such effect do not state a case arising from some condition or some use of tangible property.

As to the first, we hold that the affirmative allegation of furnishing defective equipment to Lowe states a case within the statutory waiver of immunity arising from some condition or some use of tangible property. It is further apparent that a failure to furnish proper protective equipment for Lowe's injured knee, if such was the case, is not distinguishable, in so far as the problem at hand is concerned, from the failure to provide bed rails for a hospital bed in *McGuire,* or from the failure to provide protective items of laboratory equipment in *Mokry.* A football uniform is composed of various items of individualized equipment and the protective equipment furnished players may vary with the individual because of his physical characteristics and the hazards of the particular position he plays. Football uniforms are designed to protect players from injury and players who have suffered a previous injury are commonly furnished special protective devices and equipment. Both the standard and specially designed protective devices are integral parts of the football uniform, e. g., special taping or knee braces furnished a player with an injured knee are as much a part of his uniform as his helmet, or shoulder pads, or whatever. So we also hold that Lowe's allegations of a negligent failure to furnish him proper protective items of personal property, to be used as a part of the uniform furnished him, bring his case within the statutory waiver of immunity arising from some condition or some use of personal property.

■ A collateral problem raised by the points of error and counterpoints relates to "Lowe's request for admissions and interrogatories" served upon Texas Tech with the recitation that such requests were made pursuant to the Texas Rules of Civil Procedure, Rules 168, 169 and 170. The request was stricken by the trial court but this was held to be error as to the interrogatories by the Court of Civil Appeals, citing *Texas*

*Dept. of Corrections v. Herring, supra.* The Attorney General, representing Texas Tech, appears to argue in support of the trial court action that it was not required to respond to the interrogatories because they were based, at least in part, upon the answers to requests for admissions that are impermissible by reason of Tex.Rev.Civ. Stat.Ann. art. 4411 (1966), which provides:

> No admission, agreement or waiver, made by the Attorney General, in any action or suit in which the State is a party, shall prejudice the rights of the State.[1]

In *Herring,* we made clear that the State is not exempt from these rules of procedure but is subject to them as any other litigant. We reasoned that Rule 168 of the procedural rules operates to clarify facts; that the State will not be prejudiced by a revelation of the facts involved in a case; and that the Attorney General in responding to interrogatories seeking to elicit such facts will not be called upon to make admissions, agreements or waivers contrary to art. 4411. Of course, the State enjoys the same procedural rights under these rules as any other litigant with respect to the filing and hearing of written objections to interrogatories upon whatever basis; in addition, the Attorney General may raise for ruling the further objection that any called for admission, if made, would prejudice the rights of the State and hence would be ineffective under the provisions of art. 4411.

The judgments of the trial court and of the Court of Civil Appeals are reversed, and the cause is remanded to the trial court.

Concurring opinion by GREENHILL, C. J., in which McGEE and DOUGHTY, JJ., join.

GREENHILL, Chief Justice (concurring).

The purpose of this concurring opinion is to encourage the Legislature to take another look at the Tort Claims Act, and to express more clearly its intent as to when it directs that governmental immunity is waived. Speaking at least for myself, it is difficult to understand the language of the present statute and to apply it. I am not concerned with the broadness or the narrowness of the waiver. I was among those who encouraged the passage of the Act.[1] Our problem is trying to determine what the Legislature meant.

The language of Section 3 is particularly difficult to apply. As set out in the Court's opinion, the language of Section 3, as I understand it, waives immunity where there is personal injury or death caused "from some condition or use" of tangible personal property or real property.

If the words "caused from some condition or use" of property are intended as words of a *limited* waiver of immunity, and if the waiver is intended to be confined to cases involving injury proximately caused by some condition or use of property which is owned or furnished by the State, we reach certain results.

But if they mean that the Legislature intended for the State to be liable in every tort case in which personal property was either used or not used, then we reach different results. This construction would

---

1. The Attorney General also argues that the point of error relevant to the action of the trial court in striking Lowe's request for admissions and interrogatories is not properly before the Appellate Courts. The argument is that a supplemental transcript containing the request and the motion to strike the request was not requested or obtained by Lowe, or filed until a date out of time. The Attorney General recognizes that the original transcript was filed in time; and that his objection to the filing of the supplemental transcript, together with his motion to strike its filing, were overruled by the Court of Civil Appeals. We regard the action of the Court of Civil Appeals as a direction to

file the supplement transcript within the reasonable contemplation of Rule 428 of the Rules of Civil Procedure. Cf. *Warner Const. Co. v. Blue Diamond Co.,* 429 S.W.2d 912 (Tex.Civ. App.—Dallas 1968, writ ref'd n. r. e.). And see Tucker, *Preliminary Motions in the Appellate Courts,* in STATE BAR OF TEXAS, APPELLATE PROCEDURE IN TEXAS § 15.6 (1964).

1. Greenhill, *Should Governmental Immunity for Torts Be Reexamined, and If So, by Whom?* 31 Texas B.J. 1036 at 1072 (1968). See also, Greenhill and Murto, *Governmental Immunity,* 49 Texas L.Rev. 462 at 472–3 (1971).

**302**

amount to a general waiver in virtually all tort cases. That is not necessarily bad, but I do not think this is what the Legislature intended. It is difficult to imagine a tort case which does not involve the use, or nonuse, of some item of real or personal property; and to me, if there is a waiver in all cases where some item of personal property is either used or not used, there is virtually an unrestricted waiver of immunity.

The original version of the bill which enacted the Tort Claims Act did call for such an unrestricted waiver of immunity.[2] That version, however, was substantially modified prior to passage. It was passed only after Governor Smith had vetoed an earlier bill which provided a somewhat limited waiver.[3] The Governor's veto message makes clear that the Governor felt that even this limited version was too broad and all-encompassing.[4] Under these circumstances, I think it is clear that the bill which was finally passed by the Legislature and approved by the Governor did not contain a broad, general waiver of governmental immunity. By its express provisions, it waives immunity only in particular instances.

Coming to this case, what did the Legislature intend to waive with regard to the furnishing of, or failure to furnish, athletic equipment? The statute, paraphrased, says "some condition or use" of the uniform which was furnished. I can understand a waiver for the furnishing of a defective or broken helmet. That would be the furnishing for use of personal property in a defective condition. The statutory language "condition or use" of property implies that such property was furnished, was in bad or defective condition or was wrongly used.

We were told in the oral argument of this case by plaintiff's counsel that the plaintiff entered the game with a knee brace. There is no suggestion that it was a defective brace. Then, we were told, a coach considered that the plaintiff was not moving fast enough, or "cutting" well enough. The coach took the plaintiff out, had him remove the brace, and put the plaintiff back in. Then the plaintiff's knee was injured. It may be that the action of the coach constituted negligent conduct; but I fail to see how the condition of the knee brace which was furnished had anything to do with the plaintiff's injury.

Similarly, it is argued in the plaintiff's brief in this Court that there was a negligent failure by the trainer to tape, or properly tape, the plaintiff's knee. The allegation is that the tape was available but not used, or properly used. So here we go again: Texas Tech did *furnish* tape (an item of personal property), and there is no allegation that there was anything wrong with the tape. The personal property was furnished and was not in defective condition for use. The negligence, if any, was the failure of the trainer to do an act,—tape the knee. I do not think the Legislature intended its "condition or use of property" waiver to include the alleged negligent *conduct* of the trainer or coach.

Carried to its logical conclusion, as I understand the Court's opinion, it might be construed to find a waiver of immunity because the injury grew out of the nonuse (the removal) of a nondefective knee brace which was furnished; i. e., some condition *or use* [nonuse] of personal property. I do not think the Legislature intended this general sort of waiver.

2. House Bill 456, as originally introduced in the 61st Legislature, contained the following provisions:

Sec. 5. Insofar as the purposes of this Act are concerned, the distinction heretofore known to the common law between governmental and proprietary functions of government is hereby abolished in the State of Texas, and all functions of government, regardless of the nature thereof, are hereby declared to be proprietary in nature, it being the intent of the Legislature that no activity of any unit of government, of whatever nature or location or at whatever level, shall be exempt from the provisions of this Act.

3. House Bill 117.

4. Message from Governor Smith, Tex.H.R.J. 1921 (1969).

A hypothetical example will point up the problem: assume that in a State-operated hospital, one of its doctors negligently removed the wrong kidney. In so doing, he uses tangible personal property,—a scalpel. There is no defect in the scalpel, but there is injury in the use of tangible personal property. The Legislature could provide a waiver for the negligent conduct of the doctor, but it has not. Did it intend a waiver based on the condition or use of tangible personal property,—the scalpel? I do not think so.

In any event, the Legislature will be in session in the near future; and it would be very helpful if it would give litigants and the courts guidelines which are easier to follow.

The facts of the case set out above,— about the coach's having taken the plaintiff out to remove the brace, and the failure of the trainer to tape, are not in the pleadings; and our decision cannot turn on such a factual situation. But because these matters were made known to us in oral argument and in the plaintiff's brief, they are subject to comment in view of a remand for trial. Among the allegations pleaded is a count that Texas Tech furnished equipment and uniforms which were defective. Taking this to be true, as we must at this stage of the game, it was error for the trial court to sustain the State's plea in abatement. I, therefore, concur in the judgment of the Court.

McGEE and DOUGHTY, JJ., join in this concurring opinion.