Carrasco v. Tex Trans Inst 

















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-018-CV

     JUAN CARRASCO,
                                                                                              Appellant
     v.

     TEXAS TRANSPORTATION INSTITUTE,
     TEXAS A & M UNIVERSITY SYSTEMS,
                                                                                              Appellee
 

From the 361st District Court
Brazos County, Texas
Trial Court # 38,999-361
                                                                                                    

O P I N I O N
                                                                                                    

      Juan Carrasco appeals from a "directed verdict" in a bench trial that ordered his former
employer, Texas Transportation Institute, Texas A&M University Systems (TTI), to pay him a
net recovery of $2,892.17 in unpaid overtime compensation under the Fair Labor Standards Act
of 1938 (FLSA). 29 U.S.C.A. § 207(a)(1) (West Supp. 1995). Carrasco complains on appeal that
the court erred in the following respects:
      ●    in finding that TTI asserted a valid good-faith defense to his claim for unpaid overtime
compensation;
      ●    in ruling that TTI was not bound by its responses to requests for admissions; 
      ●    in finding that under the FLSA he was entitled only to half-time compensation for
overtime hours worked; and 
      ●    in failing to award him reasonable attorney's fees and costs.
STANDARD OF REVIEW
      Relying on its trial brief filed at the close of Carrasco's evidence, TTI moved for a "directed
verdict." Technically, TTI requested the court to render a judgment. Grounds v. Tolar Indep.
School Dist., 856 S.W.2d 417, 422 n. 4 (Tex. 1993) (Gonzalez, J., concurring). There are
significant distinctions between a directed verdict in a jury case and a motion for judgment in a
non-jury case. Id. One distinction is the standard of review on appeal. Id. Because in a trial to
the bench the judge is the arbiter of factual and legal issues, an appellate court must presume that
the court ruled on the sufficiency of the evidence. Qantel Business Sys. v. Custom Controls, 761
S.W.2d 302, 305 (Tex. 1988). Therefore, the court's factual rulings will stand unless there is
legally or factually insufficient evidence to support them. Id. However, we review the court's
interpretation and application of the FLSA and other questions of law de novo. Drollinger v. State
of Ariz., 962 F.2d 956, 958 (9th Cir. 1991); Mercer v. Bludworth, 715 S.W.2d 693, 697 (Tex.
App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).
FACTUAL BACKGROUND
      Juan Carrasco worked for TTI from August 23, 1990, to October 4, 1992, installing traffic
monitors at certain locations throughout Texas. On March 20, 1991, TTI's Assistant Agency
Director sent a written notification to Carrasco informing him that his position was determined to
be non-exempt under the FLSA. Further, the letter informed him that, beginning March 28, 1991,
he was to record any hours worked in excess of forty per week, for which he would be
compensated at a rate of time and one-half of his regular rate. See 29 U.S.C.A. § 207(a)(1). 
      On July 1, 1991, without written notification to Carrasco, and without any change in his
duties, TTI promoted Carrasco to Research Technician. According to TTI's determination, this
"new position" was exempt from the FLSA overtime-pay requirements. Id. § 213(a)(1). On
September 25, 1991, TTI asked the university to review Carrasco's job description for a second
determination of the status of his position under the FLSA. The university again concluded that
the position was exempt from overtime-pay.
      Carrasco's job was funded by a grant which expired in October 1992, and as a result, his
position was terminated at that time. As the end of his employment drew near, Carrasco
questioned TTI about his unpaid overtime. At that time, TTI sought the guidance of a Department
of Labor investigator, who determined that Carrasco's position was not exempt. To determine the
amount of unpaid wages owed to Carrasco, TTI relied upon the figures submitted by Carrasco
because it did not keep such records. And, although TTI admitted at trial that there was no
agreement or "clear understanding" entitling it to calculate Carrasco's unpaid overtime under the
fluctuating-work-week method, that is the method TTI employed. Overtime Compensation, 29
C.F.R. § 778.114 (1994). This method allows for recovery of overtime at a rate of one-half of
an employee's regular rate. Id. 
      Carrasco received a letter from TTI on April 9, 1993, advising him that TTI had decided to
pay him $3,637.10 in back wages. Carrasco did not accept the figures calculated by TTI and filed
suit on August 30, 1993. Because the FLSA has a two-year statute of limitations absent a willful
violation, Carrasco is only seeking to recover unpaid overtime compensation for the two-year
period beginning August 30, 1991. 29 U.S.C.A. § 255(a) (West 1985). 
AVAILABILITY OF GOOD-FAITH DEFENSE UNDER THE FLSA
      TTI moved for a judgment on the grounds that it acted in good faith on "the opinion or
interpretation of the Wage and Hour Division of the Department of Labor," citing section 259 of
the Portal-To-Portal Pay Act.


 29 U.S.C.A. § 259 (West 1985). In the alternative, TTI argued
that, even if it owed Carrasco unpaid overtime compensation, it should not be liable for liquidated
damages under the FLSA because it made a good-faith attempt to determine the correct amount
owed to Carrasco and relied upon the calculations of the Department of Labor.



      The court granted TTI's "Motion for Directed Verdict," but it ordered TTI to pay Carrasco
only $2,892.17 in unpaid overtime compensation. Carrasco's point on appeal challenges the
court's good-faith finding under section 259. However, the court's findings and conclusions are
only consistent with a finding of good faith under section 260, which exempts TTI from liquidated
damages, and are inconsistent with a such finding under section 259, which would have exempted
TTI from all liability.


 Apparently, Carrasco brought his first point on appeal to ensure that the
court's language in the order and its findings and conclusions are not construed as a finding of
good faith under section 259, but only under section 260. 
      We interpret the court's order as denying TTI's claim under section 259, because the court,
in fact, ordered TTI to pay back wages. Moreover, granting TTI's motion for judgment under
section 259 would have been erroneous as a matter of law. The law is well established that an
exemption from liability under section 259 can only be based on an employer's reliance upon a
written administrative regulation, order, ruling, approval, or interpretation of the Administrator
of the Wage and Hour Division of the Department of Labor—not upon that of an investigator as
was indisputably the case here. 29 U.S.C.A. § 259(a), (b)(1); Hodgson v. Square D Company,
459 F.2d 805, 811 (6th Cir. 1972); Murphy v. Miller Brewing Company, 307 F.Supp. 829, 838
(E.D. Wis. 1969) (holding that an employer's reliance upon an investigator's summary of an
employer's total liability under the FLSA does not entitle the employer to protection under section
259).  
      We question whether TTI sustained its burden by a preponderance of the evidence that it was
exempt from discretionary liquidated damages under section 260. TTI's good-faith argument
focused on its "good-faith attempt to determine the correct amount owed to Plaintiff," rather than
on any alleged good-faith determination that Carrasco's position was exempt and that TTI had
reasonable grounds for believing that its job classification was not in violation of the FLSA. 29
U.S.C.A. § 260. However, Carrasco has not attacked the court's good-faith finding under section
260.
      Therefore, considering Carrasco's first point of error, we affirm the court's finding of good
faith under section 260 and its conclusion that a violation of the FLSA occurred. However, for
the reasons that follow, we will hold that the court erred in its determination of the amount of
unpaid wages. 
ATTORNEY GENERAL'S RESPONSES TO DISCOVERY BIND TTI
      Carrasco propounded two sets of interrogatories, requests for admissions, and requests for
production to TTI. The attorney general, representing TTI, filed responses to the discovery
requests.


 
      Approximately eleven months later, during Carrasco's presentation of his case in chief, he
attempted to introduce into evidence TTI's responses to his requests for admissions. The attorney
general objected, citing section 402.004 of the Texas Government Code, which provides that "[a]n
admission, agreement or waiver made by the attorney general in an action or suit to which the state
is a party does not prejudice the rights of the state." Tex. Gov't Code Ann. §402.004 (Vernon
1990). Following arguments of counsel, the court sustained the attorney general's objection to
the evidence and refused to consider the evidence contained in TTI's admissions.
      The Texas Supreme Court has made clear that, when the state becomes a litigant in the courts,
it is bound by the same rules of procedure that bind all other litigants, except where special
provision is made to the contrary. Lowe v. Texas Tech University, 540 S.W.2d 297, 301 (Tex.
1976); Texas Department of Corrections v. Herring, 513 S.W.2d 6, 7 (Tex. 1974); Texas Dept.
of Human Services v. Green, 855 S.W.2d 136, 144-45 (Tex. App.—Austin 1993, writ denied). 
We hold that section 402.004 is not a "provision to the contrary" exempting TTI from compliance
with the procedural rules. 
      Although interrogatory responses, not responses to requests for admissions, were at issue in
Herring, the Supreme Court reasoned that Rule 168 operates to clarify facts, and that the state
could not be prejudiced by a full revelation of the facts involved in the case. Tex. R. Civ. P. 168;
Herring, 513 S.W.2d at 8. Likewise, admissions within the context of Rule 169 are calculated
to simplify trials and eliminate matters about which there is no real controversy. Tex. R. Civ. P.
169; North River Ins. Co. v. Greene, 824 S.W.2d 697, 700 (Tex. App.—El Paso, 1992, writ
denied). In other words, their purpose is to clarify facts, the very objective that the Supreme
Court held did not prejudice the state. See id; Herring, 513 S.W.2d at 8. Courts have held that
other objectives of requests for admissions are improper. E.g., North River Ins. Co., 824 S.W.2d
at 700. Therefore, as long as the requests for admissions are proper requests, designed to
delineate contested facts from uncontested facts, the state is not prejudiced by complying with Rule
169, just like any other litigant. See Herring, 513 S.W.2d at 7. 
      Two years after Herring was decided, the Court addressed the effect of section 402.004 on
requests for admissions. Lowe, 540 S.W.2d at 300-01. In Lowe, it appears as though the attorney
general contended that requests for admission were impermissible under section 402.004; and,
further, because interrogatories were based on the responses to requests for admissions they, too,
were impermissible. Id. at 301. The trial court in Lowe struck the interrogatories and requests
for admissions propounded to the state. Id. at 300. The appellate court held that the trial court,
in striking the discovery requests, erred as to the interrogatories. Id. In reversing the court of
appeals and remanding the cause to the trial court, the Supreme Court noted that the state is not
exempt from the rules of procedure; that it will not be prejudiced by a revelation of the facts; and,
further, that "the Attorney General may raise for ruling [an] objection that any called for
admission, if made, would prejudice the rights of the State and hence would be ineffective under
the provisions of art. 4411 [currently § 402.004]." Id. at 301 (emphasis added). 
      At no time prior to trial did TTI, through the attorney general, lodge an objection and obtain
a ruling as to whether a specific request for admission would prejudice the rights of the State. 
Rather, only after Carrasco had relied on the admissions, had failed to develop evidence from
other sources, and was offering the admissions into evidence at trial did the attorney general object
on TTI's behalf. 
      Considering that the principal purpose of Rule 169 admissions is to clarify facts, "prejudicing
the state's rights" is an unlikely result in responding to proper requests. Tex. Gov't Code Ann.
§402.004; Herring, 513 S.W.2d at 8; North River Ins. Co., 824 S.W.2d at 700. Should the
attorney general, acting on behalf of the state, elect to contest the validity of a specific request for
an admission, he must do so in the normal course of discovery; that is, the state, like other
litigants, must file a specific, timely objection to the request in accordance with Rule 169. Tex.
R. Civ. P. 169. Section 402.004 does not operate to insulate the state from trial errors involving
admissions. Texas Dept. of Human Services v. Green, 855 S.W.2d at 145.
      Because the attorney general did not object to the requests for admissions under section
402.004 in accordance with Rule 169, TTI waived any objection it may have had to the requests,
and all facts contained in TTI's admissions are conclusively established. Tex. R. Civ. P. 169. 
TTI's admissions prove the following: (1) Carrasco "was entitled to be paid overtime at the rate
of one and one-half times his hourly rate, for all hours worked at TTI in excess of 40 hours in any
week between September 1, 1991 and August 30, 1993;" (2) during the period from September
1, 1991, to July 31, 1992, Carrasco earned $10.66 per hour and worked a total of 560 hours of
overtime; and (3) during the period from August 1, 1992, to September 30, 1992, Carrasco earned
$10.55 per hour and worked a total of 150 hours of overtime. The evidence is illustrated by the
following chart.



RELEVANT
DATES

ADMITTED
HOURLY
RATE

TIME AND
ONE-HALF
RATE

ADMITTED
OVERTIME
WORKED

UNPAID
WAGES



9/1/91 - 7/31/92

$10.55 

$15.83 

560 hours

$ 8,864.80



8/1/92 - 9/30/92

$10.66

$15.99

150 hours

$ 2,398.50



TOTAL 
UNPAID
OVERTIME

 

 

 

$11,263.30





      The chart illustrates that TTI admitted Carrasco was entitled to recover unpaid overtime
compensation totaling $11,263.30. Because the foregoing was conclusively established, the
court's conclusion regarding the permissible method of calculating overtime compensation owed
to Carrasco and its conclusion that the total owed was $3,637.10, minus deductions, are
erroneous. We sustain Carrasco's second and third points.
ATTORNEY'S FEES AND COSTS UNDER FLSA
      Section 216 of the FLSA provides that, in actions for unpaid wages or unpaid overtime
compensation, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs,
allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29
U.S.C.A. § 216(b) (West Supp. 1995) (emphasis added). This section has been construed to be
mandatory, regardless of the size of the award or any settlement offers. Lee v. Coahoma County,
Miss., 937 F.2d 220, 227 (5th Cir. 1991); Fegley v. Higgins, 19 F.3d 1126, 1134-35 (6th Cir.
1994) (noting that, to vindicate the congressionally-identified policies and rights, undue emphasis
should not be placed on the amount of the plaintiff's recovery in determining an award of
attorney's fees). Moreover, the court's conclusion that Carrasco was not a "prevailing party"
warranting an award of attorney's fees and costs is erroneous because it improperly determined
the amount of Carrasco's unpaid overtime compensation.
      At trial, Carrasco's attorney testified on his own behalf concerning his fees. His narrative
testimony spanned three pages of the statement of facts and specifically detailed the work he did
in this case, including preparing specific documents, reviewing specific documents and materials,
attending numerous conferences with his client and with opposing counsel, appearing at a
deposition, as well as participating in numerous meetings and telephone conferences. He testified
that he is familiar with fees charged in Brazos County on FLSA cases, and that a rate of $125 per
hour is a customary and reasonable rate in the county. He further testified that, up to the date of
trial, he had invested in excess of 150 hours in preparing the case for trial. Finally, he testified
that a reasonable amount of attorney's fees in this case is $18,750.
      TTI did not object to his testimony. On cross-examination, TTI attempted to attack a
statement that Carrasco's attorney made in his opening statement: "[W]e will show through
evidence [that a reasonable attorney's fee] is $12,500." Other than its attack on that statement,
whether his fees were $12,500 or $18,750, TTI's counsel did not question the reasonableness of
the time spent in preparation of the case, of specific tasks completed, or his testimony proving that
his hourly rate was reasonable. Opening statements are not evidence. Border Apparel-East, Inc.
v. Guadian, 868 S.W.2d 894, 898 n. 6 (Tex. App.—El Paso 1993, no writ); and see Tex. R. Civ.
Evid 603. Counsel's testimony, the only evidence regarding attorney's fees, was "not
contradicted by any other witness, or attendant circumstances and [was] clear, direct and positive,
and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon [and
thus may be] taken as true, as a matter of law." Ragsdale v. Progressive Voters League, 801
S.W.2d 880, 881 (Tex. 1990) (holding that attorney's fees may be awarded by the court of appeals
as a matter of law).
      Carrasco filed a certified bill of costs, executed by the district clerk of Brazos County, which
proved a total of $1,274 costs incurred in the case. The court refused Carrasco's request for costs. 
However, as already noted, the FLSA mandates an award of costs when a plaintiff is awarded "any
judgment." 29 U.S.C.A. § 216(b). Therefore, the court erred in refusing to award Carrasco the
costs proven up and on file in the cause. We sustain Carrasco's fourth point.
DISPOSITION
      We reverse the judgment of the court and render the judgment that it should have rendered. 
Tex. R. App. P. 80(c). We render judgment that Carrasco recover from TTI unpaid overtime
compensation in the amount of $11,263.30, attorney's fees in the amount of $18,750, and costs
in the amount of $1,274. 
 
                                                                               BOB L. THOMAS
                                                                               Chief Justice
Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Reversed and rendered
Opinion delivered and filed October 4, 1995
Publish