

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00022-CV

_____

TITUS REGIONAL MEDICAL CENTER, Appellant

V.

GLENNA VIRGINIA ROACH, Appellee

On Appeal from the 276th Judicial District Court
Titus County, Texas
Trial Court No. 34,786

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

This appeal calls on us to address an oft-debated, but seldom crystal clear issue regarding a governmental entity's immunity from suit. Glenna Virginia Roach (Roach) underwent surgery at Titus Regional Medical Center (Titus). After Roach's surgery, she was taken to a hospital room and placed in a hospital bed. In her suit, Roach alleged that the hospital staff failed to raise the bed's safety rails and left her unattended while still under the influence of anesthesia and that Titus failed to notify Roach's family that she had been placed in a room after the surgery was completed. Roach fell from the bed and suffered significant injuries. This failure to engage the bed's safety rails or to notify her family that she was then unattended in a room, alleged Roach, amounted to negligence and was the basis of her lawsuit.[1] Titus, in a pretrial motion, asserted the governmental immunity provided in Section 102.021(2) of the Texas Civil Practice and Remedies Code, which precludes suit against a governmental entity except in certain prescribed circumstances; Roach claimed the hospital's immunity was waived because the acts alleged led to

> personal injury . . . caused by a condition or use of tangible personal or real property [such that] the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2011). We concur with the determination by the trial court that Roach's pleadings alleged a cause of action which waived

---

[1] Roach also alleged negligence by Titus in failing to alert Roach's family that she had been moved from surgery to her room. Roach concedes at argument that any negligence in this failure involved "use" of information (i.e., the knowledge that she had been moved from surgery to her room) and thus could not constitute "use" of tangible property for purposes of the waiver of governmental immunity, which is the sole issue on appeal. *See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175 (Tex. 1994).

2

Titus' immunity pertaining to the issue regarding the safety bed rails and we affirm the trial court's order as to that issue. We reverse the determination that the issue regarding the transmission of information was waived and remand to the trial court for further proceedings in accord with this opinion.

*Immunity and Standard of Review*

Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the State or certain governmental units have been sued unless the State consents to the suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). In reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in favor of the nonmovant and look to the nonmovant's intent. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We are not required to look solely to the pleadings when deciding a plea to the jurisdiction; we may consider evidence relevant to jurisdiction when it is necessary to resolve the jurisdictional issue raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). Whether a trial court has subject-matter jurisdiction is a question of law which is subject to de novo review. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Whether a pleader has alleged facts which affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law reviewed de novo. Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. *Miranda*, 133 S.W.3d at 225–26.

3

*"Use" of Property*

The applicable governmental immunity statute and the scope of waiver expressed therein has a "long and arduous history." *York*, 871 S.W.2d at 177. No proper examination of the issue of interpretation and application of the governmental immunity statute would be complete without a review of several much-discussed Texas Supreme Court cases which deal with the issue. We begin that examination with a triumvirate of cases, spanning the period from 1975 to 1989, in each of which the Texas Supreme Court found the allegations of the respective plaintiffs were brought within the statute's contemplation of waiver of immunity.

*The "Outer Bounds" of Waiver of Governmental Immunity*

The earliest of these three cases is *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528 (Tex. 1975), in which the plaintiff claimed that the hospital negligently provided a hospital bed that possessed no safety rails; the plaintiff fell from the bed and was injured. The provision of the rail-less bed, the plaintiff claimed, was a use or condition of tangible personal property which waived immunity. The hospital raised governmental immunity in its motion for summary judgment, saying that the want of safety rails was a non-use of property, not a use of it; the trial court granted the hospital's motion for summary judgment on that basis. The Texas Supreme

4

Court held that if the hospital were found to be negligent in failing to provide a bed without safety rails, it could not assert governmental immunity. *Id.* at 529.[2]

The second case frequently cited in discussions of the history of governmental immunity is *Lowe v. Texas Tech University*, 540 S.W.2d 297, 300 (Tex. 1976). Lowe sued Texas Tech University, alleging that the school was responsible for an injury Lowe sustained while playing college football. Lowe claimed that his uniform included a knee brace (Lowe had suffered a prior injury, necessitating the brace); Lowe's suit alleged the coaching staff either failed to provide Lowe with the brace or required him to play without it. As a result, Lowe suffered a second, more serious, injury that precipitated the suit. The Texas Supreme Court found, "Both the standard and specially designed protective devices are integral parts of the football uniform, e.g., special taping or knee braces furnished a player with an injured knee are as much a part of his uniform as his helmet, or shoulder pads, or whatever." *Id*. Based on that rationale, it was determined that the use of the football uniform (which included the knee brace) was use of tangible personal property, thus bringing about a waiver of immunity.

In the final one of the three cases, decided thirteen years later, the Texas Supreme Court found a waiver of governmental immunity when the governmental agency failed to provide a life preserver to a child (known to suffer seizures) who was taken swimming while under the care of a governmental entity and who then drowned. *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169

---

[2]Years later, the Texas Supreme Court described the situation in *Overton*: "The hospital did not merely allow the patient access to the bed; it actually put the patient in the bed as part of his treatment." *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004).

(Tex. 1989). The Texas Supreme Court found "[a] life preserver was just as much a part of Robinson's swimming attire as the knee brace was part of the uniform in *Lowe*." *Id.* at 171. Thus, the life preserver, as part of the swimsuit, was deemed to be the use of tangible personal property as contemplated in the statute; the allegation of liability because of the governmental unit's failure to provide a life preserver was not barred by the claim of immunity. *Id.*

Seven years after the holding in *Robinson*, the Texas Supreme Court described limitations on the holdings in *Lowe* and *Robinson*: "These cases represent perhaps the outer bounds of what we have defined as use of tangible personal property." *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996). Moreover, "[t]he precedential value of these cases is therefore limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries." *Id.* The plaintiffs in *Kerrville* were the parents of a woman killed by her estranged husband, a person who had been treated for mental illnesses at the state hospital. When the husband/patient was discharged, he was provided with oral medications to take with him upon his discharge. The patient murdered his wife (daughter of the plaintiffs); the plaintiffs claimed that the hospital was negligent in prescribing oral medications and that he should, instead, have been medicated by injection. The Texas Supreme Court stated that the issue was whether the hospital's "administration of an oral form of Thorazine, rather than an injectionable drug, constitutes use or misuse of tangible personal property under the terms of the Texas Tort Claims Act," and held that

6

"failure to administer an injectionable drug is non-use of tangible personal property and therefore does not fall under the waiver provisions of the Act." *Id.* at 584.

*The Instant Case*

Titus relies on *Kerrville*'s description of a non-use of tangible property; Titus maintains that in this case, the allegation that the hospital staff failed to raise the safety rails equates to an allegation that the hospital did not use the safety rails. Going further, Titus concludes that Roach's allegation is based on a non-use of property, rather than a use of it. Just as the *Kerrville* hospital did not waive its immunity by failing to use an injectable format of medication, reasons Titus, it did not waive immunity by a failure to use the rails.

Roach in turn cites us to *Hampton v. University of Texas*, 6 S.W.3d 627 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The plaintiffs in *Hampton*, like Roach, claimed the patient fell from his hospital bed because the hospital did not engage the bed's safety rails. Interpreting the petition's allegations in the light most favorable to the plaintiffs, the Houston First Court of Appeals found the petition did indeed allege an injury caused by a condition or use of tangible property; therefore, the hospital's governmental immunity had been waived. *Id.* at 630. Hampton claimed that the hospital's failure to implement the safety features was a misuse of tangible property; according to the opinion, the petition also alleged negligence in the hospital's providing a defective bed, i.e., one that lacked essential safety features—raised safety rails. *Id.* The court of appeals construed Hampton's pleadings to allege that the hospital, not Hampton,

7

retained control over the bed's safety features, before and during the time Hampton used the bed. *Id.* at 631. The court discussed *Overton*, *Lowe*, and *Robinson* and found "no significant difference in this case and those in which governmental units provided personal property lacking some integral safety component." *Id.*[3] The court pointed out the hospital supplied Hampton with a bed with attached safety equipment, which did not function until it was activated by the hospital. The court rejected the hospital's defense that failure to activate the safety equipment in question was a non-use of the property. This is the same argument Titus makes in this case.

Obviously, the circumstances in *Hampton* were quite similar to those in Roach's case. It is difficult for us to contemplate how, when a patient is placed in a bed as part of the hospital's treatment of that patient, the bed is not being used in the treatment. The rails are quite different from the knee brace in *Lowe* or the life preserver in *Robinson* because the rails simply cannot be used at all unless they are used as a part of the bed. Therefore, the examination of whether there is a use of property as contemplated in the statute, the "property" in question is the entire bed and not its adjunctive safety rails. Where the bed is equipped with safety rails, it is likewise difficult to conjure how those rails were not meant to be used: positioned so as to effectuate their protective purposes. The safety rails on a hospital bed are integral parts of the bed, just as the brakes on a wheel chair would be parts of the chair, or the doors on an automobile would be parts of the car. "[F]or 'use' of tangible personal property to occur under the terms of the Act, one must 'put or

---

[3]*Hampton* does not mention or discuss *Kerrville*, although released three years after that Texas Supreme Court case.

8

bring [the property] into action or service; to employ for or apply to a given purpose.'" *Kerrville State Hosp.*, 923 S.W.2d at 584 (citations omitted).

While the circumstances in *Hampton* are all but identical to the case before us, and that case's holding is persuasive, we must be bound by the Texas Supreme Court's holdings. Titus relies on the *Kerrville* holding that non-use of a possible treatment method (supplying a patient's medication via injection, rather than merely physically providing the medication to the patient) did not constitute use as contemplated by the waiver statute. "The gravamen of their complaint is that [the hospital's] non-use of an injectionable drug was the cause of their daughter's death. This failure to use a form of drug is just as much a non-use of a drug as was the hospital's failure to give its patient her medicine in *Kassen*."[4] *Id.* at 585. Pointing out that almost every instance of treatment by doctors in state medical facilities involves some form of tangible property, the court said there could not be a waiver of immunity in each such occurrence, lest a patient could "always complain that a different form of treatment than the one employed would have been more effective and still claim waiver under the Act. If such a complaint were enough to constitute the use of tangible personal property under the Act, the doctrine of sovereign immunity would be rendered a

---

[4]*Kassen v. Hatley*, 887 S.W.2d 4 (Tex. 1994). In *Kassen*, a mental patient admitted to a state hospital was seen taking her medication in excessive quantities. *Id.* at 7. Hospital employees therefore took the patient's medication away from her. *Id.* The hospital refused to return the medication to the patient when she left the hospital, and she committed suicide a short time later. *Id.* The patient's parents sued the hospital and its employees for wrongful death, claiming that the hospital employees' failure to provide the patient with medication when she left the hospital caused her death. *Id.* The Texas Supreme Court concluded that "[t]his sequence of events does not allege an injury arising from the 'use' of the medication. It states a claim for non-use of property that does not trigger waiver of sovereign immunity under the Texas Tort Claims Act." *Id.* at 14.

9

nullity." *Id*. at 586. Unlike *Kerrville*, there can be no medical decision in our contemplation which would involve not properly positioning the safety rails on Roach's bed.

Situations involving failure to give medication or give medication in a particular format are distinguishable from situations where equipment (which would qualify as tangible property) is used by a state actor hospital, but not used according to the equipment's contemplated purposes. Roach's allegation that she was placed in a hospital bed that was equipped with safety rails which were not engaged or used qualifies as a use of tangible property by the state entity. If the hospital did not, as Roach alleges, raise or engage the bed's attached safety rails, that "non-raising" does not equate to "non-use" as contemplated by the Texas Supreme Court in *Kerrville*. Such a literal analysis of the situation does not comport with the overall meaning of the statute. In *Kerrville*, the Texas Supreme Court offered the following hypothetical:

> For example, if a hospital provided a patient with a bed lacking bed rails and the lack of this protective equipment led to the patient's injury, the Act's waiver provisions would be implicated.

*Id*. at 585 (citing *Lowe*, 540 S.W.2d at 300). It is just as reasonable that if a hospital supplies a patient with a bed equipped with safety rails, but does not activate or engage those rails, coupled with the fact that the failure to utilize the rails is the proximate cause of the patient's injury, the statute's waiver provisions would be implicated. Referring to *Overton*, the earlier hospital bed case where the bed did not have rails, the Texas Supreme Court pointed out, "[t]he hospital did not merely allow the patient access to the bed; it actually put the patient in the bed as part of his

10

treatment." *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004).[5]  Roach alleged in her petition that she was placed in the hospital's bed immediately after being brought from the recovery room after surgery and the rails were not raised.   The rails were part of the bed; failing to properly employ the bed qualifies as the hospital's use of its tangible property.   Roach's allegations were sufficient to implicate the statute's waiver of immunity provision.[6]

We affirm the trial court's denial of Titus' claim of governmental immunity solely on the basis that the use of the hospital bed (with its safety rails) was a use of tangible personal property as contemplated in the statute.   We reverse the determination that there has been no waiver of governmental immunity as to Roach's claim of negligence pertaining to the hospital's failure to notify Roach's family that she had been returned to her room after surgery and remand to the trial court for further proceedings in accord with this opinion.


Bailey C. Moseley
Justice

---

[5]In *Cowan*, the hospital allowed the patient to retain personal property, suspenders, and a walker, which he later used to commit suicide.   This was held not to be "use" as contemplated by the statute.

[6]In its briefing and at oral argument, Titus refers us to our opinion in *Texas State Technical College v. Beavers*, where we said,

> The integral safety component must be entirely lacking, rather than merely inadequate. . . .   Stated conversely, supplying safety components that are inadequate, but not entirely lacking, does not constitute a use of personal property so as to waive immunity.

218 S.W.3d 258, 264 (Tex. App.—Texarkana 2007, no pet.) (citing *Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580, 584 (Tex. 2005) (claim that knife used in college drama production inherently unsafe without an adequate stab pad did not mean integral safety component lacking for purposes of governmental immunity waiver)).   Here, even if the bed's rails were characterized as integral safety components, they were neither lacking nor inadequate.   They simply were not used despite being part of the bed, which was used in Roach's post-surgery treatment.

11

Date Submitted:     June 8, 2011
Date Decided:      June 24, 2011