**Reversed and Rendered and Opinion filed June 27, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00847-CV

**THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER,
Appellant**

**V.**

**VICKI M. KING, Appellee**

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2009-29122**

## O P I N I O N

In the primary question in this interlocutory appeal, we determine whether a state university's cancer-treatment center waived sovereign immunity to a patient's claims that she was injured by allegedly falling from a hospital bed after the nurse monitoring her care raised the upper side rails on the patient's bed, but did not raise the lower side rails. We conclude that these allegations should not be

characterized as a complaint about the use of tangible personal property for which immunity is waived, but as a complaint about the exercise of medical judgment. Although the patient presented affidavit testimony about her beliefs and conclusions in an attempt to raise a fact issue, we conclude that the trial court erred in considering this evidence over the cancer-treatment center's objections. We therefore reverse the trial court's denial of the cancer-treatment center's plea to the jurisdiction, and we render judgment dismissing the patient's claims with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee Vicki M. King allegedly sustained a broken arm and a torn rotator cuff at the University of Texas M.D. Anderson Cancer Center ("MDA") while she was undergoing chemotherapy. She alleged that MDA is a governmental entity, and that its sovereign immunity from her personal-injury claim has been waived under the Texas Tort Claims Act because her injury was caused by a condition or use of tangible personal property.[1] MDA denies that it has waived immunity, and over the course of this litigation, has pressed this argument through an original and three supplemental pleas to the jurisdiction and a motion for no-evidence summary judgment.

In an earlier appeal, MDA challenged the trial court's denial of its original and first two supplemental pleas to the jurisdiction and its motion for summary judgment. *See Univ. of Tex. M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). We affirmed the trial court's denial of summary judgment, but reversed the trial court's denial of MDA's pleas

---

[1] Although the terms often are used interchangeably, "sovereign immunity" applies to the state and its agencies, and "governmental immunity" is available to political subdivisions. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

to the jurisdiction and rendered judgment dismissing all of King's claims except her allegation that MDA caused her injuries through the improper use of a hospital bed. *Id.* at 878. Because King failed to allege sufficient facts to determine whether the trial court could properly exercise jurisdiction over this claim, we remanded the case to allow King the opportunity to amend her pleadings. *Id.*

On remand, King alleged that MDA failed to use the side rails of her hospital bed and failed to use all required restraints and mechanisms to prevent her from falling. MDA then filed a third supplemental plea to the jurisdiction and produced evidence challenging King's jurisdictional allegations. Among other things, MDA produced affidavits and deposition excerpts from Mercedita Dimaculangan and Grace Dumlao, two registered nurses who observed King while she was receiving chemotherapy on the day she allegedly was injured. It is undisputed that King's hospital bed had four side rails, and that the two upper rails—that is, the rails that were to the sides of King's head and upper arms—were raised, while the two lower rails—that is, the rails near King's legs—were not raised. MDA also produced uncontroverted evidence that King's call light was within her reach; the brakes on the bed were locked; King had no history of falling; and no one had ordered King restrained.

MDA produced evidence that Dimaculangan left King unsupervised after King had been given medication that left her in a deep sleep. Ten minutes after Dimaculangan left the room, a patient across the hall from King called for a nurse and reported that King's breathing made "crackling sounds" or sounded as if she were choking. Dimaculangan found that King was still asleep in her bed with the upper rails raised, but she was cold, sweating, and pale. The nurse called the supervising physician and awakened King, who complained that she was unable to raise her right arm. After the supervising physician assessed her for neurological

injury, King was transported to an emergency center.

King responded to the jurisdictional plea with evidence that included different excerpts from the same depositions. In these, Dimaculangan agreed that a patient could fall out of bed if "a rail is not properly put up in place," and for safety reasons, the nurses ensure that patients with a known history of falling are secured. She also agreed both that a "semiconscious" patient has a greater chance of falling out of the bed, and that raising the two lower bed rails could prevent a patient from falling. In addition, she agreed that patients could be injured by a hospital-bed rail if an arm or leg became trapped or if patients "knock[ed] themselves" on the rail. Dumlao attested that bed rails can keep a patient from falling out of bed, and that the bed's upper rails are always raised and extend to about the level of a patient's elbows, but that at MDA, the lower rails normally are not raised. She agreed that MDA does not use straps to restrain patients. In addition to this evidence, King also produced her affidavit, in which she attested to her beliefs about how she was injured and to statements purportedly made to her by her treating physician.

The trial court overruled MDA's evidentiary objections and denied its third supplemental plea to the jurisdiction. MDA brought this interlocutory appeal.

## II. ISSUES PRESENTED

In its first issue, MDA argues that the trial court erred in denying its plea to the jurisdiction. In its second issue, MDA contends that the trial court erred in overruling its objections to certain jurisdictional evidence. MDA asserts in its third issue that the trial court erred in failing to dismiss King's "sham allegations."

## III. GOVERNING LAW

The Texas Tort Claims Act provides a limited waiver of immunity for certain claims against governmental units. *See* TEX. CIV. PRAC. & REM. CODE

4

§§ 101.001–.109 (West 2011 & Supp. 2012). As relevant here, the waiver applies to claims of "personal injury or death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2) (West 2011). Allegations of nonuse of property are insufficient to fall within this waiver provision. *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 372 (Tex. 2012). The Texas Supreme Court has held that in certain circumstances, however, immunity is waived for claims in which the plaintiff alleges that injury or death was caused by the property's lack of an integral safety component. *See, e.g.*, *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, 169, 171 (Tex. 1989) (where patient drowned when employees of a mental-health center took him swimming without providing him with a life preserver, immunity was waived because, given patient's epilepsy, the life preserver was a necessary safety component of his swimming attire); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976) (immunity waived where student athlete's injured knee was reinjured when school furnished him with a football uniform without a knee brace); *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 528–29 (Tex. 1975) (per curiam) (immunity waived where a patient receiving post-operative care was injured in a fall from a hospital bed on which no safety rails had been installed).

A plea to the jurisdiction may be used to challenge the sufficiency of the jurisdictional allegations in the pleadings or to controvert the jurisdictional facts alleged. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). If the pleadings or evidence affirmatively negate a jurisdictional fact, then the court may grant the plea to the jurisdiction without allowing the plaintiff an opportunity to amend the pleadings. *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008).

Whether the facts as alleged by the pleader affirmatively demonstrate that the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 226. In reviewing a challenge to the pleadings, we construe the allegations liberally in the pleader's favor and consider the pleader's intent. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, the plaintiff should be afforded the opportunity to amend unless the pleadings demonstrate incurable jurisdictional defects. *Miranda*, 133 S.W.3d at 226–27.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, courts must consider relevant evidence submitted by the parties. *Id.* at 227. The standard of review for a jurisdictional plea based on evidence generally mirrors that of a traditional summary judgment. *Id.* at 228. Under this standard, we credit as true all evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Id.* The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id.* If the movant discharges this burden, the nonmovant must present evidence sufficient to raise a genuine issue of material fact regarding jurisdiction, or the plea will be sustained. *Id.* As with a traditional motion for summary judgment, if the movant fails to present conclusive proof of facts negating subject-matter jurisdiction, the burden does not shift to the nonmovant to establish the existence of an issue of material fact. *See id.*

The issues presented in this case also include challenges to the trial court's evidentiary rulings. We review the trial court's ruling on evidentiary objections for abuse of discretion. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011); *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 667 (Tex. App.—Houston

[14th Dist.] 2012, pet. denied). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We will reverse an evidentiary ruling only if it probably caused the rendition of an improper judgment. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000).

## IV. ANALYSIS

### A. The Nature of King's Allegations

King alleged that MDA "improperly used Ms. King's hospital bed" by (1) "failing to secure Ms. King with her hospital bed side rails"; and (2) failing to set and secure all required fasteners, patient restraints, adjustment mechanisms, and mechanical stops to prevent Ms. King from falling." We construe the latter allegation as a restatement of King's complaint that MDA failed to raise the bed's lower side rails. This is because even after a remand to amend her pleadings, King did not allege that MDA used any tangible personal property other than a hospital bed. The jurisdictional evidence identifies the bed's safety features, which consist of (1) brake locks, (2) a call light for the patient's use in summoning assistance, (3) upper side rails, and (4) lower side rails. The undisputed evidence established that the bed's brakes were locked, the call light was within King's reach, and the upper side rails were raised. Thus, in alleging that MDA failed "to set and secure all required fasteners, patient restraints, adjustment mechanisms, and mechanical stops to prevent [her] from falling," King could have intended to complain that MDA failed to use the bed's remaining safety feature—that is, the lower side rails—or to complain that health-care providers failed to use some other equipment or to order King restrained. Because we must construe the pleadings in the

7

pleader's favor[2] and immunity is not waived for complaints about the nonuse of tangible property[3] or the exercise of medical judgment,[4] we construe King's second allegation as a restatement of her complaint that MDA should have raised the lower side rails of her bed.[5]

## B.     The Hospital-Bed Side-Rail Cases

In arguing that the failure to raise two of the bed's four side rails constitutes the use of tangible personal property for which immunity is waived, King relies on cases in which courts have held that immunity is waived where the injury allegedly was caused by the property's lack of an integral safety component. In particular, she relies on three cases dealing with the use or nonuse of a hospital bed's side rails.

In *Overton Memorial Hospital v. McGuire*, hospital personnel placed a patient who was receiving post-operative care in a hospital bed that was not equipped with side rails. *Overton*, 518 S.W.2d at 528. The court "assume[d] that the Hospital had a duty to *install* bed rails and was negligent in not doing so." *Id.* at 529 (emphasis added). The court concluded that if the hospital was negligent, then it could not rely on immunity as a means to avoid liability. *Id.* In *Hampton v. University of Texas—M.D. Anderson Cancer Center*, 6 S.W.3d 627, 631 (Tex. App.—Houston [1st Dist.] 1999, no pet.), the First Court of Appeals addressed another post-operative patient's fall from a hospital bed. In that case, the patient

---

[2] *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

[3] *See Friend*, 370 S.W.3d at 372.

[4] *See King*, 329 S.W.3d at 880 & n.3 (citing *Arnold v. Univ. of Tex. Sw. Med. Ctr. at Dall.*, 279 S.W.3d 464, 469 (Tex. App.—Dallas 2009, no pet.)).

[5] The trial court apparently reached the same conclusion, and specifically stated in the order denying the plea to the jurisdiction that King "did not allege a new 'non-hospital' bed allegation."

8

was placed in a bed that was equipped with side rails to prevent him from falling, and with an alarm to alert the nursing staff if he fell or attempted to leave the bed; however, the plaintiffs alleged that none of this equipment was used. *Id.* at 629. The defendant in that case challenged the sufficiency of the plaintiffs' jurisdictional pleadings, and the trial court granted the plea to the jurisdiction. *Id.* at 628. The appellate court reversed, stating, "We find no significant difference in this case and those in which governmental units provided personal property lacking some integral safety component." *Id.* at 631. Finally, in *Titus Regional Medical Center v. Roach*, No. 06-11-00022-CV, 2011 WL 2517198 (Tex. App.— Texarkana June 24, 2011, pet. denied), the Sixth Court of Appeals considered facts nearly identical to those in *Hampton*—that is, a post-operative patient was placed in a bed in which the hospital staff failed to raise any of the bed's side rails. *Id.*, 2011 WL 2517198, at *1. Like the *Hampton* court, the *Roach* court equated the hospital personnel's failure to raise any of the side rails on a post-operative patient's hospital bed with the use of tangible personal property lacking an integral safety component. *Id.*, 2011 WL 2517198, at *4. The court accordingly held that the hospital's immunity was waived.

Unlike the present case, there is no indication in *Overton*, *Hampton*, or *Roach* that the records in those cases contained jurisdictional evidence establishing that a health-care provider assessed the risks to the patient and determined that it was appropriate to raise some rails and not others. To the contrary, *Hampton* and *Roach* concerned only challenges to the sufficiency of the plaintiffs' pleadings, not a challenge to the jurisdictional evidence. *See Hampton*, 6 S.W.3d at 630; *Roach*, 2011 WL 2517198, at *1. And although *Overton* dealt with a summary judgment, the court described the record as "sketchy" and did not detail the evidence. *Overton*, 518 S.W.2d at 529. Significantly, the authoring court in each of these

three cases indicated that no rails were used at all.

King asserts that MDA's failure to use two of the bed's four side rails or to use other unspecified methods of restraint is analogous to the use of property lacking an integral safety component as described in *Overton*, *Hampton*, and *Roach*. But this is not a case in which rails were absent or were not used at all. Because multiple side rails were installed and could be independently raised or lowered, it was possible for MDA's medical staff to exercise medical judgment in determining which ones were appropriate to use in a given case. Moreover, the jurisdictional evidence shows that MDA's nursing staff did exercise medical judgment in deciding not to raise the two lower side rails of King's bed.

## C.    The Jurisdictional Evidence

The evidence established that King was being treated on an outpatient basis, and in the initial assessment of King on the day of the alleged incident, she was described as alert, oriented, and ambulatory. Dimaculangan then implemented MDA's "Safety Measures." According to MDA's policies, "'Safety Measures' refers to room orientation, provision of the nurse call light, bed brakes locked[,] side rails up (as appropriate) and patient instructions to call for assistance with movement as required." Dimaculangan attested that she made sure that the upper side rails on King's bed were raised and secured, but she did not raise the lower side rails. She stated that she always raises the upper side rails, both for safety reasons and because the bed's controls are located on the upper side rails.

Dimaculangan testified that in deciding to leave King's lower side rails down, the factors she considered were that (1) King was ambulatory, (2) she denied any history of falling, and (3) she was receiving chemotherapy and might need to go to the bathroom. The nurse concluded that by leaving the lower rails down, King would be able to get out of bed without the problem of lowering or

10

holding down the lower side rails. Dimaculangan testified that she "didn't see any need for a restraint" and that King didn't "need to be fastened" to the bed. Moreover, it is undisputed that no restraints had been ordered. Dimaculangan additionally agreed that the bed's rails can injure a patient if part of the patient's body strikes the rail or one of the patient's limbs becomes trapped. Thus, after assessing the patient, Dimaculangan raised the two upper side rails, left the two lower side rails down, and checked the "Safety Measures" box on MDA's form, thereby indicating that she had secured "side rails up (*as appropriate*)."[6]

Dimaculangan also agreed that "[i]f there are factors that indicate that the hospital[-]bed side rails are necessary and need to be used and they are not used, . . . this is a misuse of the hospital bed"; however, it is undisputed that two rails were used, and no witness testified that all four rails must be used in every case. To the contrary, MDA's policy that side rails must be raised "as appropriate" indicates that it is not always necessary to use all four side rails. Dimaculangan's testimony that "factors" are considered in assessing the need for bed rails does not support King's position that the presence of four *raised* bed rails is an integral safety component of the bed. Instead, it is evidence that nurses exercise their judgment in assessing the extent to which it is necessary to raise side rails.

## D.    The Exercise of Medical Judgment

Health-care providers must make judgments about the "protection of individual patients and the patient populations in their facilities based on the mental and physical care the patients require." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 850 (Tex. 2005). In light of the jurisdictional evidence, the crux of King's complaint appears to be that Dimaculangan used poor medical judgment in assessing King's risk of falling or in balancing the risk of falling

---

[6] Emphasis added.

against the risk of entrapment, and thus, in determining that the safety measures "appropriate" for King's protection including raising the upper two side rails and leaving the two lower side rails down. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 182 n.5 (Tex. 2012) (reiterating that providing a safe environment at a health-care facility is a matter of professional health-care judgment). *See also Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) (explaining that although plaintiffs complained in their pleadings about the use and condition of property, the "real substance" of their complaint was that the defendant failed to restrain the patient; thus, immunity was not waived); *D.P. v. Wrangell Gen. Hosp.*, 5 P.3d 225, 229 n.17 (Alaska 2000) (characterizing the determination of "the appropriate level of physical restraints" as a "specialized medical decision") (cited with approval in *Tex. W. Oaks Hosp.*, 371 S.W.3d at 182 n.5, and in *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 852).

Here, the exercise of medical judgment in deciding whether to raise the hospital bed's rails along half of the bed's length instead of its entire length is analogous to the exercise of medical judgment in deciding to administer a medication in a short-lasting oral form instead of a long-lasting injectable form. *See Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996). In *Clark*, a patient became violent when unmedicated and had a history of failing to take his medication; nevertheless, hospital personnel dispensed his antipsychotic medication in an oral form that produced effects for a relatively short time. The patient murdered his estranged wife within a week after his release from the hospital, and the victim's parents sued, arguing that health-care providers should have given the patient an antipsychotic drug in an injectable form that remained effective for up to a month. *Id.* at 583–84 & n.3. The court concluded that the plaintiffs' true complaint was not about the use of the less-effective oral

12

medication to control the patient's behavior, but about the nonuse of the more-effective, longer-lasting injectable drug. *See id.* at 585.

In explaining this result, the court pointed out that health-care providers in state facilities use tangible personal property virtually every time they treat a patient. *Id.* at 585–86. But "if there is a waiver in all cases where some item of personal property is either used or not used, there is virtually an unrestricted waiver of immunity." *Id.* at 586 (quoting *Lowe*, 540 S.W.2d at 302). As *Clark* illustrates, such an unrestricted waiver of immunity is not consistent with the legislature's intent in enacting the Texas Tort Claims Act, or with the Texas Supreme Court's guidance in interpreting it.

As in *Clark*, the essence of King's complaint is that MDA's safety measures simply didn't go far enough. But a complaint that the state actor should have chosen a more effective treatment or protection—that "more should have been done"—is not a complaint about the use of property. *See Clark*, 923 S.W.2d at 585 (pointing out that in *Lowe*, the court held that immunity was waived because a school failed to provide an injured student athlete with any knee brace at all, and explaining that it did not hold that immunity would have been waived simply by a showing "that another type of knee brace would have better protected him"). *See also Friend*, 370 S.W.3d at 373 (explaining that plaintiffs may not use artful pleadings to enlarge the integral safety-component doctrine). If immunity were waived in cases such as the one before us, then there would be no immunity for claims in which the use *or nonuse* of particular side rails was determined through the exercise of a health-care provider's medical judgment.[7]

---

[7] The experience of other states offers support for the position that the assessment of a given patient's risk of falling or of entrapment can require the exercise of medical judgment. *See, e.g.*, *Butler v. Caldwell Mem'l Hosp.*, 90 Idaho 434, 440, 412 P.2d 593, 595 (1966) ("There was no evidence that any failure to raise the rail along the lower half of the bed would create an

13

In light of the jurisdictional evidence showing that Dimaculangan exercised medical judgment in deciding that it was appropriate to leave the lower side rails of King's bed down, we conclude that King's complaint concerning the failure to raise those rails is a complaint about the health-care decisions of MDA's nursing staff rather than about the use of tangible personal property.

## E. King's Affidavit

We have concluded that a complaint about the failure to raise certain rails is not a complaint about the use of tangible personal property under the facts presented here, and that conclusion disposes of all of the allegations in King's petition that she was injured by falling because the lower rails were *not* raised; however, King made statements in her affidavit in which she appears to complain that she was injured by the one of the upper rails that *was* raised. In addition, some statements in her appellate brief could be construed as an argument that the trial court properly denied the plea to the jurisdiction because her affidavit included

---

unreasonable risk of harm to plaintiff. . . . The doctor testified that the room and the bed in which she was placed were appropriate and sufficient for her care . . . ."); *Sturgis Bank & Trust Co. v. Hillsdale Cmty. Health Ctr.*, 268 Mich. App. 484, 498, 708 N.W.2d 453, 461 (Mich. Ct. App. 2005) ("[A] nursing background and nursing experience are at least somewhat necessary to render a risk assessment and to make a determination regarding which safety or monitoring precautions to utilize when faced with a patient who is at risk of falling."); *Bell v. W. Harrison Cnty. Dist.*, 523 So.2d 1031, 1033 (Miss. 1988) ("A nurse's decision as to whether or not bed rails should be utilized entails a degree of knowledge concerning the subject patient's condition, medication, history, etc."); *Fox v. White Plains Med. Ctr.*, 125 A.D.2d 538, 538, 509 N.Y.S.2d 614, 615 (N.Y. App. Div. 1986) (where plaintiffs complained of the absence of side rails on the patient's bed, "the essence of the plaintiffs' allegations . . . is that an improper assessment of the patient's condition and the degree of supervision required, particularly with regard to his ability to ambulate post-operatively, led to the subject injuries"); *Mossman v. Albany Med. Ctr. Hosp.*, 34 A.D.2d 263, 264, 311 N.Y.S.2d 131, 132–33 (N.Y. App. Div. 1970) (explaining that a hospital is not negligent in failing "to erect bed rails in the absence of a professional medical direction to that effect, since the decision to use that equipment is medical in nature," but is negligent if it fails to do so "after the medical judgment has been exercised and an order made for their use"). *See also Bryant v. Oakpointe Villa Nursing Ctr., Inc.*, 471 Mich. 411, 427, 684 N.W.2d 864, 873–74 (2004) ("[T]he assessment of whether a bed rail creates a risk of entrapment for a patient requires knowledge of that patient's medical history and behavior.").

14

evidence that she was injured by a raised rail (as opposed to a lowered rail), and that this evidence created a question of fact as to whether she was injured by MDA's use of tangible personal property. It appears to be her position that even if we hold that a complaint about the failure to raise a rail is a complaint about the nonuse of property, a complaint about a raised rail is a complaint about the use of property, and thus, the assertions in her affidavit are sufficient to support the trial court's denial of MDA's plea to the jurisdiction. We therefore briefly address this evidence.

King made the following statements in her affidavit that are relevant to this issue:

> I believe I fell from the hospital bed or was dropped while the nurses were attempting to pick me up and reposition me in the hospital bed.

> I also believe my arm was trapped inside the hospital bed rail as the nurses attempted to reposition me in my hospital bed. My arm was severely bruised from the hospital bed rail.

MDA objected that these statements were speculative, inconsistent, conclusory, and were not based on personal knowledge. MDA further objected that King was not qualified to express an expert opinion about the cause of the bruising to her arm. The trial court overruled these objections, and MDA challenges that ruling on appeal.

We agree that the trial court erred in overruling MDA's objections. Affidavits must be made on personal knowledge and affirmatively show that the affiant is competent to testify to the stated matters. TEX. R. CIV. P. 166a(f). "An affiant's *belief* about the facts is legally insufficient" and does not raise a question of fact. *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008). Moreover, the affidavit testimony of an interested witness must be "clear, positive and direct, otherwise

credible and free from contradictions and inconsistencies," and capable of being readily controverted. *See* TEX. R. CIV. P. 166a(c). King's statements are inconsistent and admittedly were made on belief and not based on her personal knowledge. She also failed to show that she is competent to offer an opinion identifying the cause of injuries sustained while she allegedly was unconscious. *See In re Higby*, No. 01-11-00946-CV, 2012 WL 6625028, at *8 (Tex. App.— Houston [1st Dist.] Dec. 20, 2012, orig. proceeding) ("For expert testimony to be admissible, the proponent of the testimony must establish that the expert is qualified and that his testimony is relevant and based upon a reliable foundation."). Because there is no other evidence that King was injured by a hospital-bed rail, we conclude that the erroneous ruling probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1).

We sustain the portion of MDA's second issue pertaining to these statements. Because the jurisdictional evidence conclusively established that King's claims do not fall within the waiver of immunity under the Texas Tort Claims Act, and King failed to raise a genuine issue of material fact, we also sustain MDA's first issue. Given our disposition of these matters, it is unnecessary to address MDA's remaining issues and arguments. *See* TEX. R. APP. P. 47.1.

## V. CONCLUSION

We conclude that the allegations in King's petition are properly characterized as a complaint that MDA erred in assessing her risks of falling or entrapment, and accordingly failed to do all it should have done to protect her from falling from her hospital bed. Because this should not be considered as a complaint about the use of tangible personal property for which MDA's immunity is waived, but should instead be treated as a complaint about the exercise of medical judgment for which immunity is not waived, the trial court erred in

16

denying MDA's plea to the jurisdiction as to the allegations in her live pleading. We further hold that the trial court erred in overruling MDA's objections to King's testimony concerning her beliefs about how she was injured or about the cause of bruising to her arm. Thus, that evidence does not afford an alternative basis on which to affirm the trial court's denial of MDA's plea to the jurisdiction.

We accordingly reverse the trial court's order and render judgment dismissing King's suit with prejudice.



/s/     Tracy Christopher
        Justice


Panel consists of Justices Christopher, Jamison, and Donovan.