**Reversed and Remanded and Opinion filed January 10, 2023.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-22-00090-CV**

---

**JACK HART, Appellant**

**V.**

**MANRIQUEZ HOLDINGS, LLC, Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2021-53308**

---

## O P I N I O N

Appellee Manriquez Holdings, LLC purchased property neighboring appellant Jack Hart's home. After Manriquez Holdings undertook a construction project on the gravel strip separating the parties' properties, Hart sued and obtained a temporary restraining order enjoining the construction's progress.

Manriquez Holdings asserted a counterclaim against Hart alleging tortious interference with contract. Hart filed a motion to dismiss the claim under the

Texas Citizens' Participation Act[1] ("TCPA") and the motion was denied by operation of law. For the reasons below, we reverse the denial of Hart's TCPA motion to dismiss and remand the cause for further proceedings.

## BACKGROUND

Hart owns a home in a neighborhood located north of downtown Houston. In 2018, Manriquez Holdings purchased lots adjacent to Hart's property with plans to build a brewery. A gravel strip separated Hart's property from the lots purchased by Manriquez Holdings; Manriquez Holdings sought to convert this strip into a paved roadway open to the public.

Manriquez Holdings submitted to the City of Houston construction plans and surveys that characterized the gravel strip as an extension of a public roadway. In July 2021, the City approved the construction plans. Shortly thereafter, Manriquez Holdings entered into a contract with Safe Flow Utilities, Inc. ("Safe Flow"), pursuant to which Safe Flow agreed to pave and improve the gravel strip for approximately $100,000.

On August 23, 2021, Safe Flow's work crew began stripping and grading the gravel strip. The following day, Hart filed a verified petition for declaratory and injunctive relief against Manriquez Holdings and the City of Houston,[2] seeking to enjoin the construction. In his petition, Hart asserted that the gravel strip does not qualify as a public right-of-way and, therefore, the City of Houston had no authority to authorize the improvements and Manriquez Holdings had no right to undertake them. According to Hart, the gravel strip constituted a "driveway" that

[1] The legislature amended the TCPA effective September 1, 2019, for actions filed on or after that date. *See* Act of May 17, 2019, 86 Leg., R.S., ch. 378, § 11, 2019 Tex. Gen. Laws 684, 687. Because Hart's suit was filed after this date, all citations to the TCPA are to the current version unless otherwise indicated.

[2] The City of Houston is not a party to this appeal.

2

only benefited adjacent landowners — not the public at large.

On August 25, 2021, the trial court heard and granted Hart's request for a temporary restraining order. Several weeks later, the trial court held a hearing on Hart's application for a temporary injunction. The trial court denied Hart's application.

Manriquez Holdings filed its original answer and asserted against Hart a counterclaim for tortious interference with contract. Manriquez Holdings alleged that Hart "willfully and intentionally interfered with Manriquez Holdings' contracts with the City of Houston and Safe Flow by bringing this lawsuit." Hart filed an answer denying the allegations and asserting affirmative defenses, including justification. Hart also filed a TCPA motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-.011.

Manriquez Holdings filed a response to Hart's motion to dismiss and a first and second amended answer. In its second amended answer, Manriquez Holdings changed its tortious interference claim so that it was premised solely on its contract with Safe Flow. Hart filed a motion to strike portions of the affidavits Manriquez Holdings attached to its TCPA response.

The trial court held a hearing on Hart's TCPA motion in January 2022. The trial court overruled Hart's evidentiary objections and took the motion to dismiss under advisement. The trial court did not rule on the motion and it was denied by operation of law. *See id*. §§ 27.005(a), 27.008(a). Hart filed this interlocutory appeal. *See id*. § 51.014(a)(12).

## ANALYSIS

In four issues, Hart challenges the trial court's denial of his TCPA motion to dismiss and asserts:

3

1. the trial court erred by dismissing the portion of Manriquez Holdings' tortious interference claim premised on Manriquez Holdings' contract with the City of Houston;

2. Manriquez Holdings failed to present clear and specific evidence of a prima facie case of tortious interference based on its contract with Safe Flow;

3. Hart established as a matter of law the affirmative defense of justification; and

4. the trial court erred by overruling Hart's evidentiary objections.

We address these issues below.

## I. Governing Law and Standard of Review

The TCPA was designed to protect a defendant's rights of speech, petition, and association while protecting a claimant's right to pursue valid legal claims for injuries caused by the defendant. *Montelongo v. Abrea*, 622 S.W.3d 290, 295 (Tex. 2021) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.002). To effectuate this purpose, the TCPA provides a multi-step process for the dismissal of a legal action. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003(a), 27.005. The phrase "legal action" includes "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." *Id.* § 27.001(6).

First, the movant must demonstrate that the legal action is "based on or is in response to" their exercise of the right of free speech, petition, or association. *Id.* § 27.005(b). If the movant meets this burden, the claimant may avoid dismissal by establishing "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). "Prima facie case" refers to the quantum of evidence required to satisfy the nonmovant's minimal factual burden and generally refers to the amount of evidence that is sufficient as a matter of law to support a rational inference that an allegation of fact is true. *In re Lipsky*, 460

4

S.W.3d 579, 590 (Tex. 2015) (orig. proceeding); *Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 639 (Tex. App.—Houston [14th Dist.] 2020, pet. dism'd). The TCPA does not define "clear and specific evidence." *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-27.011. However, the supreme court has held that, for purposes of the TCPA, "clear" means "'unambiguous,' 'sure,' or 'free from doubt,'" and "specific" means "'explicit' or 'relating to a particular named thing.'" *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (quoting *In re Lipsky*, 460 S.W.3d at 590).

But even if this showing is made, the court nonetheless must dismiss a legal action if the movant establishes an affirmative defense that entitles it to judgment as a matter of law. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d).

The trial court's application of this process is subject to a *de novo* review. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018). Under this standard, we "make an independent determination and apply the same standard used by the trial court in the first instance." *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We consider the relevant pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and any supporting or opposing affidavits "stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). We review these materials in the light most favorable to the nonmovant. *See Enter. Crude GP LLC v. Sealy Partners, LLC*, 614 S.W.3d 283, 293-94 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

## II. Application

### A. Tortious Interference Claim Premised on the City of Houston Contract

In its original answer and counterclaim, Manriquez Holdings pleaded a tortious interference claim premised on two contracts: one with the City of Houston and one with Safe Flow. In its second amended answer and counterclaim, Manriquez Holdings' tortious interference claim was based only on its contract with Safe Flow.

On appeal, Hart argues that Manriquez Holdings' amended pleading effectively nonsuited its tortious interference claim based on the City of Houston contract. Asserting that "[t]he voluntary dismissal of a claim subject to a pending TCPA motion does not moot the movant's right to relief," Hart contends that the trial court erred by denying his motion to dismiss with respect to this claim.

In response, Manriquez Holdings asserts there was never a separate legal action based on a contract with the City of Houston that created an independent "legal action" subject to TCPA dismissal. Rather, Manriquez Holdings contends, the changes made in its amended pleading constitute "mere amendments to factual allegations."

Resolution of this issue is governed by our recent opinion in *Saks & Co., LLC v. Li*, 653 S.W.3d 306 (Tex. App.—Houston [14th Dist.] 2022, no pet. h.). There, plaintiff Li was employed as a department store salesperson when she was accused of committing theft. *Id*. at 309-10. Li was arrested and held in jail for several days; the charges against her eventually were dismissed. *Id*. at 310-11. After her release, Li sued the department store and three other employees for defamation. *Id*. at 309.

In her original petition, Li's defamation claim was premised on statements

6

made to (1) police officers, (2) other employees, and (3) Li's friends. *Id*. at 309, 314. The defendants filed a TCPA motion to dismiss. *Id*. at 310. Li then filed an amended petition that altered the factual allegations underlying her defamation claim. *Id*. Instead of complaining about statements made to the police or other employees, Li alleged that the defamatory statements only were made to one of her friends. *Id*. at 310, 314. The trial court denied the defendants' TCPA motion to dismiss and the defendants appealed. *Id*. at 314.

On appeal, the defendants asserted that the TCPA warranted dismissal of Li's defamation claims as pleaded in ***both*** her original and amended petition. *Id*. Agreeing with the defendants' argument, we held that the court "must consider Li's defamation claim as pleaded at the time [the defendants] filed their TCPA motion." *Id*. Continuing on, we concluded that the TCPA required the dismissal of Li's defamation claim premised on alleged defamatory statements made to the police and other employees. *See id*. at 314-16. However, the TCPA did not require the dismissal of the defamation claim pleaded in Li's amended petition, which was premised only on statements made to one of Li's friends. *Id*. at 318.

Here too, we must consider Manriquez Holdings' tortious interference claim as pleaded at the time Hart filed his TCPA motion to dismiss — including those particular allegations pleaded in support. *See id*. at 318. In its "Original Answer & Original Counterclaim," Manriquez Holdings stated, in relevant part, as follows:

> Hart willfully and intentionally interfered with Manriquez Holdings' ***contracts with the City of Houston and Safe Flow*** by bringing this lawsuit claiming that the paving of Glen Park Avenue has encroached, or is encroaching, on his property's boundary line, as well as Glen Park's property boundary line, without evidence and after having filed at least two previous documents with the City of Houston acknowledging its ownership of Glen Park Avenue. Hart's lawsuit and the resulting temporary restraining order was a proximate cause of Manriquez Holdings' actual damages by causing costly construction

7

delays and additional construction work which totals at least $43,302.44.

(emphasis added).  This counterclaim pleads two separate tortious interference claims:  one premised on the contract with the City of Houston and one premised on the contract with Safe Flow.  Accordingly, we analyze the TCPA's application separately with respect to each tortious interference claim, beginning with the claim premised on the City of Houston contract.  *See id.*; *see also, e.g.*, *Nguyen v. ABLe Commc'ns, Inc.*, No. 02-19-00069-CV, 2020 WL 2071757, at *7, *10-12 (Tex. App.—Fort Worth Apr. 30, 2020, no pet.) (reviewing the denial of a TCPA motion to dismiss, the court analyzed the plaintiff's tortious interference claim separately based on the two contracts pleaded to support the claim).

Manriquez Holdings' tortious interference claims are based on the same action:  Hart filing the underlying lawsuit.  Manriquez Holdings did not argue in the trial court or on appeal against the TCPA's applicability in this context.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(B) (the TCPA applies to a legal action based on "the right to petition"); *see also Judwin Props. Inc. v Lewis*, 615 S.W.3d 338, 347 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (the TCPA applied to a claim alleging the defendant breached the contract by "bringing suit").

We therefore proceed to examine whether Manriquez Holdings met its burden under the TCPA to establish by clear and specific evidence a prima facie case for each essential element of the claim in question.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).  Four elements must be met to establish a claim for tortious interference with contract:  (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) injury proximately caused by the defendant's interference; and (4) actual damages.  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002);

8

*Reg'l Specialty Clinic, P.A. v. S.A. Randle & Assocs., P.C.*, 625 S.W.3d 895, 902 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

Manriquez Holdings does not identify — and our review of the record did not find — any evidence showing the existence of a valid contract between Manriquez Holdings and the City of Houston that was subject to interference. *See Butnaru*, 84 S.W.3d at 207; *Reg'l Specialty Clinic, P.A.*, 625 S.W.3d at 902. Therefore, Manriquez Holdings failed to establish a prima facie case for each essential element of its tortious interference claim premised on the City of Houston contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c).

We sustain Hart's first issue and conclude the trial court erred by denying Hart's TCPA motion to dismiss with respect to this claim.

### B. Tortious Interference Claim Premised on the Safe Flow Contract

Next, we analyze whether Manriquez Holdings established by clear and specific evidence a prima facie case for each essential element of its tortious interference claim premised on the Safe Flow contract. *See id.* § 27.005(c).

### 1. Elements of a Tortious Interference Claim

As set out above, a tortious interference with contract claim requires the plaintiff to prove that the defendant willfully and intentionally interfered with the contract. *Butnaru*, 84 S.W.3d at 207; *Reg'l Specialty Clinic, P.A.*, 625 S.W.3d at 902. To show a willful and intentional act of interference, the plaintiff must produce some evidence that the defendant was "more than a willing participant and knowingly induced one of the contracting parties to breach its obligations under a contract." *Reg'l Specialty Clinic, P.A.*, 625 S.W.3d at 902. Specifically, the plaintiff must show that the interfering party (1) had actual knowledge of the existence of a contract between the plaintiff and a third party, or (2) had knowledge

9

of facts and circumstances that would lead a reasonable person to conclude that a contract existed. *Jannise v. Enter. Prods. Operating LLC*, No. 14-18-00516-CV, 2019 WL 3432171, at *5 (Tex. App.—Houston [14th Dist.] July 30, 2019, no pet.) (mem. op.); *see also Reg'l Specialty Clinic, P.A.*, 625 S.W.3d at 903 n.6.

We recently examined this element in the context of summary judgment proceedings. *See Jannise*, 2019 WL 3432171, at *5-6. In *Jannise*, defendant Enterprise owned several easements that encumbered plaintiff Jannise's land; these easements permitted Enterprise to operate and maintain underground pipelines. *Id.* at *1. Despite these easements, certain construction activities were undertaken on Jannise's property, including travel from dump trucks filled with dirt and the use of heavy machinery to remove topsoil from the easements. *Id.* Enterprise sued, alleging that these activities posed a safety risk to the buried pipelines. *Id.* The trial court signed a temporary restraining order that required Jannise to immediately cease construction on the property. *Id.* at *1-2.

Jannise asserted a counterclaim against Enterprise for tortious interference with contract. *Id.* at *2. Jannise argued that the construction activities on his property were undertaken pursuant to a "lucrative agreement" he had with a third party and, after the restraining order was signed, the third party canceled the agreement. *Id.* Enterprise filed a no-evidence summary judgment motion challenging Jannise's tortious interference claim, arguing that Jannise had no evidence that Enterprise knew about any alleged contract. *Id.* at *3, *5. In response, Jannise asserted that it was "obvious from the circumstances of the activities on [Jannise's] property" that a reasonable person would know a contract existed. *Id.* at *5.

Concluding that this evidence was insufficient to create a fact issue, we reasoned that "there is nothing to suggest that the facts and circumstances, as

10

admitted by Enterprise, indicated that Jannise was contracting *with a third party*, as opposed to utilizing his property himself." *Id*. (emphasis in original). Holding that mere "suspicion does not rise to a level sufficient to create a fact issue as to Enterprise's knowledge," we concluded that Jannise did not present any evidence regarding the "*intentional* interference" element of his claim. *Id*. at *5-6 (emphasis in original); *see also Reg'l Specialty Clinic, P.A.*, 625 S.W.3d at 902-03 (examining a similar issue, this court stated that "suspicion without more does not rise to a level sufficient to create a fact issue" as to knowledge).

One of our sister courts of appeals also examined this element in conjunction with the TCPA's evidentiary burdens. *See RigUp, Inc. v. Sierra Hamilton, LLC*, 613 S.W.3d 177, 189-92 (Tex. App.—Austin 2020, no pet.). There, plaintiff Sierra asserted against defendant RigUp claims for tortious interference with contract, alleging that RigUp solicited two of Sierra's consultants to leave Sierra and work for RigUp. *Id*. at 183, 190. According to Sierra, these consultants had independent-contractor agreements with Sierra that contained a non-compete provision and a notice-of-termination requirement — both of which were breached when the consultants were solicited away by RigUp. *Id*. at 190-91. RigUp filed a TCPA motion to dismiss, which the trial court denied. *Id*. at 183.

On appeal, the court examined whether Sierra "present[ed] clear and specific evidence that RigUp was aware or should have been aware of [the consultants'] contractual obligations to Sierra." *Id*. at 191. To satisfy its evidentiary burden, Sierra pointed to a cease-and-desist letter it sent to RigUp approximately six months before the consultants left Sierra, in which Sierra "informed RigUp that it believed RigUp was interfering with its independent-contractor agreements with its consultants." *Id*. at 183, 191.

Concluding that the cease-and-desist letter did not constitute "clear and

specific evidence" of the element in question, the court held that the letter "did not specifically identify by name any individuals with existing independent-contractor agreements with Sierra or otherwise provide any information from which RigUp could have concluded [that these specific individuals] were Sierra consultants." *Id.* at 191. Therefore, Sierra failed to offer any evidence showing that RigUp was aware of these particular consultants' agreements with Sierra when it solicited them to work for RigUp. *Id.* at 191-92.

### 2.    Relevant Evidence

To support its tortious interference claim, Manriquez Holdings points to the following evidence to show that Hart knew about the contract between Manriquez Holdings and Safe Flow or had knowledge of facts and circumstances that would have led a reasonable person to conclude the contract existed:

- In his original petition and application for injunctive relief, Hart stated that Manriquez Holdings "deployed surveyors, work crews, and heavy equipment to begin construction on the 'driveway.'"

- In the same pleading, Hart requested that the trial court enjoin Manriquez Holdings and its "officers, agents, representatives, successors, assigns, employees, tenants, contractors, laborers, or any other person acting in concert with" Manriquez Holdings from continuing construction work on the disputed property.

- In the affidavit from Chris Manriquez, president of Manriquez Holdings, he stated that Hart "knew that Safe Flow was performing construction for Manriquez Holdings because, prior to construction, I informed [Hart] that the construction upgrade would take place."

### 3.    Analysis

Before examining whether the evidence above satisfies the burden imposed by the TCPA, we begin by addressing one of Hart's evidentiary objections that has bearing on our review of the evidence for this appeal.

12

Prior to the hearing on Hart's TCPA motion, Hart filed a motion to strike objecting to the portion of Chris's affidavit quoted above, in which Chris stated that Hart "knew that Safe Flow was performing construction for Manriquez Holdings" because Chris "informed [Hart] that the construction upgrade would take place." Hart asserted that the statements regarding his knowledge were conclusory and speculative. The trial court overruled the objection at the hearing on Hart's TCPA motion. On appeal, Hart argues that this evidentiary ruling constitutes error.

We agree. We review the trial court's ruling on an evidentiary objection for an abuse of discretion. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. King*, 417 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Id*.

A conclusory statement is one that expresses a factual inference without providing underlying facts to support that conclusion. *Padilla v. Metro. Transit Auth. of Harris Ctny.*, 497 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Affidavits that state conclusions without providing underlying facts to support those conclusions are not proper summary judgment evidence.[3] *See id*. at 86. To avoid being excluded as conclusory, an affidavit must contain specific factual bases, admissible in evidence, from which any conclusions are drawn. *See id*.

Here, Chris's statement that Hart "knew that Safe Flow was performing construction for Manriquez Holdings" is not supported by an adequate factual

---

[3] Under the current version of the TCPA, courts are instructed to consider evidence admissible under Texas Rule of Civil Procedure 166a, which governs summary judgments. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a).

basis. *See id.* Rather, Chris's affidavit only states that he told Hart "that the construction upgrade would take place." Standing alone, this general statement does not support the conclusion that Hart had specific knowledge of Manriquez Holdings' contract with Safe Flow. *See id.*; *see also Van Der Linden v. Khan*, 535 S.W.3d 179, 193 (Tex. App.—Fort Worth 2017, pet. denied) (noting the "fundamental premise" that "a witness's testimony regarding what another person was thinking is inadmissible speculation and should not be considered"). Accordingly, the trial court erred by denying Hart's evidentiary objection to this statement in Chris's affidavit. *See Univ. of Tex. M.D. Anderson Cancer Ctr.*, 417 S.W.3d at 5.

Moving on, the remaining evidence is insufficient to satisfy Manriquez Holdings' burden under the TCPA with respect to its tortious interference claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Specifically, Manriquez Holdings failed to present clear and specific evidence showing Hart willfully and intentionally interfered with its contract with Safe Flow. *See id.*; *Butnaru*, 84 S.W.3d at 207.

As outlined above, the plaintiff asserting a claim for tortious interference with contract must prove that the defendant had actual knowledge of the existence of the contract or had knowledge of facts that would lead a reasonable person to conclude that the contract existed. *See Reg'l Specialty Clinic, P.A.*, 625 S.W.3d at 903 n.6; *Jannise*, 2019 WL 3432171, at *5. Manriquez Holdings' evidence does not make this showing. Manriquez Holdings points to two statements in Hart's original petition and application for injunctive relief: (1) Hart's statement that Manriquez Holdings "deployed surveyors, work crews, and heavy equipment to begin construction", and (2) Hart's request that the trial court enjoin Manriquez Holdings and its "officers, agents, representatives, successors, assigns, employees,

14

tenants, contractors, laborers, or any other person acting in concert with" Manriquez Holdings. But these general references to unidentified third parties do not show that Hart knew or should have known that there was a specific contract between Manriquez Holdings and Safe Flow to undertake the construction project. Although Hart may have suspected that Manriquez Holdings had a contract with a third party to complete the construction, mere "suspicion" does not constitute evidence showing knowledge of a specific contract or knowledge of facts that would lead a reasonable person to conclude the contract existed. *See Jannise*, 2019 WL 3432171, at *5-6; *see also RigUp, Inc.*, 613 S.W.3d at 191-92. Rather, this evidence is equally consistent with the inference that Manriquez Holdings was undertaking the construction upgrade itself. *See Jannise*, 2019 WL 3432171, at *5 ("there is nothing to suggest . . . that Jannise was contracting *with a third party*, as opposed to utilizing the property himself") (emphasis in original).

Moreover, other statements in Hart's original petition and application for injunctive relief counsel against the inference that Hart had knowledge of a specific third-party contract with respect to the construction upgrade. In his request for expedited relief, Hart stated: "Upon information and belief, the [construction] work shown above has been authorized by Defendant City of Houston, and *is being undertaken by Defendant Manriquez Holdings, LLC*." (emphasis added). In his request for a temporary injunction, Hart stated: "the City has effectively declared that it has the sole power over and interest in the 'driveway' and parkland where it has none, and it has leveraged those non-existent property interests to *permit and authorize [Manriquez Holdings] to commence construction and development*." (emphasis added).

Taken in its entirety, this pleading does not unambiguously show Hart had knowledge that a third party was completing the construction upgrade. The

15

pleading's general reference to Manriquez Holdings' "officers, agents, representatives, successors, assigns, employees, tenants, contractors, [and] laborers" is equally consistent with an attempt to cover all contingencies as it is with demonstrated knowledge of a third-party contract. Accordingly, it does not constitute clear and specific evidence showing willful and intentional interference with a specific contract between Manriquez Holdings and Safe Flow. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *see also S & S Emergency Training Sols., Inc.*, 564 S.W.3d at 847 ("clear" means "'unambiguous,' 'sure,' or 'free from doubt,'" and "specific" means "'explicit' or 'relating to a particular named thing'").

We sustain Hart's second issue and conclude that Manriquez Holdings did not satisfy its burden under the TCPA to establish by clear and specific evidence a prima facie case for each essential element of its tortious interference claim based on the Safe Flow contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Therefore, the trial court erred by denying Hart's TCPA motion to dismiss. Because of this conclusion, we need not address Hart's third issue regarding its affirmative defense of justification.

## CONCLUSION

Having determined that Manriquez Holdings failed to satisfy its burden under the TCPA with respect to its tortious interference claims, we reverse the deemed denial of Hart's TCPA motion to dismiss. We remand the case to the trial court with instructions to dismiss Manriquez Holdings' claims after holding additional proceedings to award Hart his court costs and reasonable attorney's fees, as well as any other relief Hart may be entitled to under the TCPA.[4]

---

[4] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009.

16

/s/    Meagan Hassan
Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.